**Opinion issued August 1, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00180-CV

————————————

**RANDALL SCOTT HULSEY, Appellant**

**V.**

**MILAD ATTALLA, Appellee**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2014-34758

## MEMORANDUM OPINION

Appellee, Milad Attalla, brought a negligence suit against appellant, Randall Scott Hulsey, for damages arising from an auto collision. Hulsey appeals the trial court's judgment against him, which was entered after a jury trial. In four issues,

Hulsey contends that the evidence is factually insufficient to support causation, that the evidence is legally and factually insufficient to support the damages awarded, that the damages awarded are excessive, and that the trial court erred in admitting evidence of insurance.

We affirm.

## Background

### *The Collision*

On the morning of February 23, 2013, Attalla was driving on Farm-to-Market Road 529 ("FM 529") in Cypress. His son, J.A., was a passenger. At the intersection of FM 529 and Queenston Boulevard, Attalla stopped at a red signal light governing traffic in his eastbound direction. Traffic on the westbound side of FM 529 had a green signal light. Hulsey, who was traveling south on Queenston, approached the intersection and did not stop at the signal light, which was either stale yellow or red, governing traffic in his direction. Hulsey's Chevrolet Suburban was struck by a truck heading westbound on FM 529, then went over a median and collided with Attalla's passenger car, striking it on the driver's side and forcing it into another vehicle. Attalla suffered injuries and was taken by ambulance to a hospital. He was discharged later that day.

Hulsey testified at trial that, as he was traveling southbound on Queenston, approaching FM 529, he saw that "the light had turned yellow before the

intersection." He explained: "It was one of those situations where I had to make a split second decision whether to stop or go; and being the light traffic, I decided to move forward through the intersection." He remembered seeing a truck coming from the left and trying to slam on his brakes. He noted that he was "knocked unconscious" by the force of the impact and that emergency personnel "had to cut [him] out of the vehicle." He testified, "I believe that the light had just turned red when I was in the intersection," and "I know that because that's the last thing I saw before I got hit." He asserted that he "didn't enter [the intersection] on a red light." Hulsey's adult son, Brandon Hulsey, who was riding in the front passenger seat of the Suburban, testified that he told police officers at the scene, "My dad ran the red light."

The trial court admitted into evidence photographs of the damage to each vehicle and the police officer's crash report from the scene.

### Suit for Damages

Attalla, individually and on behalf of J.A., sued Hulsey for negligence, alleging that Hulsey had failed to keep a proper lookout, to apply his brakes, to control his speed, to stop at the traffic light, and to avoid the collision. Attalla sought damages for future medical expenses, past and future physical pain and mental anguish, and past and future physical impairment.[1]

---

[1] Attalla later abandoned his claim for past medical expenses.

3

At trial, Attalla testified that, before the collision, he suffered from "normal" back pain from his work duties and from carrying around his children. In 2008, he went to his primary care physician, Lourice Abdelmelek, M.D., complaining of lower back pain and minor tingling in his legs. Dr. Abdelmelek ordered radiographs and an MRI. Based on her findings, she recommended that Attalla take Tylenol, which Attalla noted relieved his pain. Attalla testified that Abdelmelek's records from his 2012 visit accurately reflected that he did not have any neck or back pain at that point.

After the collision in 2013, however, Attalla's quality of life "changed dramatically." He testified that he is "constantly" in pain, takes medication three to four times daily, requires help with "everything" he does, and cannot perform his usual duties at work. In addition, he can no longer play with his children as he did prior to the collision. Attalla has a master's degree in theology, and he used to perform the liturgies at his church and lead the congregation in hymns. Since the collision, however, he can no longer perform his duties at his church. Although Attalla underwent physical therapy, it did not help his pain. And, he underwent five or six epidural steroid injections, which he noted were very painful procedures. Attalla explained: "I'm trying my best to cope with medication and function as much as I can because I'm terrified of the surgery" that his orthopedic surgeon, Dr. Howard Cotler, had recommended. Dr. Cotler described the procedure to Attalla as being

4

"like a C-section," involving an incision through his abdomen and another through his back, and involving the placement of a "cage" around his spine.

During Attalla's testimony, as discussed in detail below, references were made to Hulsey's automobile liability insurance.

Attalla's wife, Maryana Attalla, testified that she and Attalla own a pharmacy. She is a pharmacist and Attalla manages their business. Before the collision, Attalla could perform the required work tasks, including regular heavy lifting and bending down. He was also the head deacon at their church, led liturgies lasting from three to four hours, and was head of the Sunday school services for high school students. He conducted training every Friday for an hour or two and went on retreats. During family vacations, he used to participate in activities such as walking for long distances, rafting, ziplining, and going on rides at amusement parks. At home, he played basketball with the children, went running with Maryana, and rode bicycles with the family.

Since the collision, however, Attalla can no longer participate in these activities as he had or at all. Just riding in a car is an issue. Attalla cannot perform any of his duties at the church because he cannot stand for the required length of time. Maryana noted that church was his "passion," and he has had to resign. She noted that, during a recent family trip to Costa Rica, she and the children went ziplining, while Attalla had to stay behind.

5

Maryana explained that, before the collision, Attalla experienced back pain, but it was not the disabling back pain he has suffered since. He is in constant pain. She and Attalla are "terrified" for him to undergo the recommended back surgery. However, the epidural steroid injections are no longer working and "someday he will have to."

Gabriela De La Torre testified that she has worked for the Attallas at their pharmacy since 2011. She used to see Attalla every day, and he worked for a majority of each workday. She did not remember his ever having complained about back pain prior to the collision. Since the collision, however, Attalla has experienced back pain and headaches and cannot perform tasks as he had previously, including heavy lifting or bending down.

Emad Mikhail Bishai, M.D., testifying as an expert for Attalla, stated that he was one of Attalla's treating physicians for pain management after the collision. Dr. Bishai noted that he is board certified in pain management and that about 95 percent of his practice involves treating patients with spine issues. Bishai testified regarding his review of Attalla's medical records, which the trial court admitted into evidence.

In 2008, several years before the collision, Attalla went to Dr. Abdelmelek complaining of lower back pain. The March 4, 2008 MRI report states that Attalla's lumbar vertebrae were within normal limits, with the exception of the lumbosacral junction ("L5-S1"), which showed decreased "disc signal intensity," with

6

"significant space narrowing" and "an approximately 6mm risk posterolateral disc protrusion impinging upon the right L5 nerve root and significant narrowing of the right neural foramen." Spondylosis[2] was also noted at L5, but with "no significant spondylolisthesis"[3] and "no spinal stenosis."[4] Thus, Bishai explained, the space between Attalla's L5-S1 vertebrae was too narrow, he had a bulging disc, and the opening through which the nerves passed and traveled down to his legs was impinged. Otherwise, Attalla's vertebrae and discs were "normally aligned."

Dr. Abdelmelek referred Attalla to an orthopedic surgeon, Kenneth Lee, M.D., who reviewed Attalla's 2008 MRI films. In his April 3, 2008 report, Dr. K. Lee noted that Attalla had reported a three-month history of lower back pain and a two-year history of numbness and tingling in his legs. Dr. K. Lee concluded that the exam and diagnostic studies were consistent with "stable" L5-S1 spondylolisthesis. He also noted a "severe disk collapse at that level." He prescribed medication and ordered an EMG, or nerve conduction study, of Attalla's legs.

The emergency room records of Methodist Hospital West, where Attalla was taken by ambulance after the collision, reflected that he presented complaining of neck and back pain. The record of the exam on February 23, 2013 showed that

---

[2]    Dr. Bishai testified that "spondylosis" refers to degenerative changes in the spine.

[3]    Dr. Bishai testified that "spondylolisthesis" refers to slipping of vertebrae.

[4]    Dr. Bishai testified that spinal "stenosis" is a narrowing of the spaces within the spine, which can place pressure on the nerves in the area.

Attalla had "Grade 1 anterolisthesis at L5-S1 with likely bilateral spondylolysis."[5] Bishai explained that the term "anterolisthesis" is a misalignment or displacement of one vertebra as compared to another. Bishai noted that this condition was not present on Attalla's MRI taken in 2008, prior to the collision.

Dr. Bishai also reviewed the records of Henry S. Lee, M.D., who treated Attalla three months after the collision. An MRI taken on May 23, 2013 showed a "Grade 1 anterolisthesis and advanced spondylosis and annular disc bulging."

Dr. Bishai testified that Attalla did not have his present injury before the collision. He explained that Attalla has "Grade 1 anterolisthesis," i.e., misalignment or displacement of one vertebra as compared to another, which is permanent, will not heal on its own, and likely to worsen over time. Bishai testified that, based on a "reasonable medical probability," the collision "more likely than not" aggravated Attalla's pre-existing condition, i.e., "caused his stable spondylolisthesis to become unstable." Although Attalla had back problems in 2008, his condition was "stable." As a result of the collision, however, Attalla's back became "unstable," in that there is "motion" in his vertebrae. Bishai explained that when a patient has offset vertebrae that are stable, the condition is usually medically managed. However, a patient with offset vertebrae that are unstable is at risk for cauda equina, a condition

---

[5]    Drs. Bishai and Cotler testified that "spondylolysis" is a defect or fracture that can result in a vertebra slipping forward or backward over the bone below.

8

that can sever nerves and cause paralysis. Thus, "based on a reasonable medical probability," Attalla will need to have surgery to fix his issues "at some point in his life." Further, the pain management treatment that Bishai administered to Attalla will not manage his pain indefinitely and there is "no nonsurgical way to fix this." Rather, "surgery is crucial in an unstable spine." Dr. Bishai noted that the October 17, 2013 radiographs of Attalla's spine taken by his orthopedic surgeon, Dr. Howard Cotler, reflected that Attalla has "lytic spondylolisthesis" and three to seven millimeters of movement in his spine, which Bishai characterized as "huge[ly] unstable." And, Bishai noted that Cotler had recommended surgery.

During cross-examination, Bishai clarified that he had not reviewed Attalla's 2008 MRI film. Rather, he reviewed the 2008 MRI report. He acknowledged that, although he had earlier testified, based on the report, that Attalla did not have spondylolisthesis prior to the collision, Dr. K. Lee had concluded that Attalla had spondylolisthesis in 2008, prior to the collision.

Dr. Cotler, a board-certified orthopedic surgeon testifying as an expert for Attalla, stated that he examined Attalla on October 17, 2013 for neck and back pain that Attalla attributed to the collision. Cotler's examination revealed that Attalla had a "painful range of motion of his low[er] back or lumbar spine." Neurologically, he was "intact," but he had some tingling in both legs. Cotler diagnosed Attalla with "traumatic L5-S1 spondylolisthesis," meaning that there was a "fracture of the pars

9

interarticularis area of the L5 vertebral body that allowed the L5 vertebral body, or the block of bone, to separate from the posterior elements." He testified that, "based on a reasonable medical probability," "something caused the break in the bone; and that's trauma." And, because of the separation, there was a "slippage of one block of bone on another," or "spondylolisthesis." Attalla had a disc herniation at L5-S1 and a "weight bearing intolerance" or "vertical instability," which made it painful for him to sit or put weight on his spine. Attalla quantified his neck pain as 10 out of 10, his leg pain as 8 out of 10, and his back pain as 7 out of 10.

Dr. Cotler noted that Attalla's March 4, 2008 MRI showed that he had spondylolysis and a disc lesion. He opined that Attalla had a "chronic condition that potentially could have had an acute situation superimposed on it." Cotler advised Attalla that he could continue symptomatic care or undergo surgery. Cotler explained that surgery is appropriate when a patient has severe incapacitating pain that interferes with his quality of his life and nonoperative care has failed. Attalla had previously undergone two epidural steroid injections and physical therapy. Cotler noted that, Attalla had a "structural abnormality," i.e., a fracture and slippage of bone, and that "structural abnormalities require structural solutions."

Dr. Cotler described the surgical procedure to be performed as a global fusion of a section of Attalla's spine. Cotler testified that the expenses for the surgery would total $225,000 and that Attalla would require six to twelve weeks of physical

therapy. Cotler noted that Attalla may later require additional surgeries and would "probably" have residual pain in the future. Cotler testified that his opinions were based on a "reasonable medical probability."

At the close of trial, Attalla requested damages in the amount of $225,000 for future medical expenses; $50,000 for past physical pain and mental anguish; $200,000 for future physical pain and mental anguish; $50,000 for past physical impairment; and $200,000 for future physical impairment. After the jury found that Hulsey's negligence proximately caused the occurrence in question, it awarded Attalla damages in the amount of $225,000 for future medical expenses; $25,000 for past physical pain and mental anguish; $175,000 for future physical pain and mental anguish; $25,000 for past physical impairment; and $200,000 for future physical impairment.[6] The trial court rendered judgment in accordance with the verdict.

Hulsey filed a motion for new trial, challenging the factual sufficiency of the evidence supporting the jury's findings as to causation and damages, and asserting that the trial court erred by admitting evidence of Hulsey's liability insurance. The trial court denied the motion for new trial.

---

[6] The trial court also asked the jury what sum of money would compensate J.A. for his physical pain and mental anguish, if any, resulting from the collision. The jury answered $0.00. Attalla does not challenge this finding in this appeal.

11

**Sufficiency of the Evidence**

In his second issue, Hulsey argues that the evidence is factually insufficient to support the jury's finding that the collision proximately caused Attalla's injuries. In his first issue, Hulsey argues that the evidence is legally and factually insufficient to support the jury award of damages for future medical expenses, future physical pain and mental anguish, and future impairment. Alternatively, Hulsey argues that the amount of damages awarded is excessive.

*Standard of Review*

When an appellant challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that no evidence supports the finding. *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). We will sustain a legal sufficiency or "no-evidence" challenge if the record shows any one of the following: (1) a complete absence of evidence of a vital fact, (2) rules of law or evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). In conducting a legal-sufficiency review, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that supports it. *Id*. at 822.

12

If there is more than a scintilla of evidence to support the challenged finding, we must uphold it. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "[W]hen the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (internal quotations omitted). However, if the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 822. "A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within th[e] zone of reasonable disagreement." *Id*.

When an appellant challenges the factual sufficiency of the evidence supporting an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that the adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 653 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). In conducting a factual-sufficiency review, we examine, consider, and weigh all of the evidence that supports or contradicts the fact finder's determination. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Plas-Tex, Inc. v.*

13

*U.S. Steel Corp*., 772 S.W.2d 442, 445 (Tex. 1989). We note that the jury is the sole judge of the witnesses' credibility, and a reviewing court may not impose its own opinion to the contrary. *See Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). When presented with conflicting testimony, the fact finder may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). We set aside the verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust. *See Dow Chem. Co*., 46 S.W.3d at 242; *Pool v. Ford Motor Co*., 715 S.W.2d 629, 635 (Tex. 1986).

## A.  *Causation[7]*

In his second issue, Hulsey argues that the evidence is factually insufficient to support the jury's finding as to causation because the evidence does not link the alleged negligence to the alleged injuries. He asserts that Dr. Cotler testified that Attalla had spondylolisthesis prior to the collision. And, Dr. Bishai's testimony that

---

[7]  Generally, when a party presents multiple grounds for reversal of a judgment on appeal, an appellate court should first address those points that would afford the party the greatest relief, i.e., rendition points before remand points. *See* TEX. R. APP. P. 43.3; *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co*., 995 S.W.2d 675, 677 (Tex. 1999). Here, Hulsey challenges only the factual sufficiency of the evidence supporting liability and challenges the legal and factual sufficiency of the evidence supporting damages. Because we overrule each of Hulsey's challenges to the sufficiency of the evidence, we discuss liability prior to discussing damages for the sake of clarity.

14

the collision caused Attalla's injuries, although couched in terms of "reasonable medical probability," was conjectural because the condition seen on the 2013 MRI could have developed before the collision.

A negligence cause of action has three elements: (1) a legal duty owed by one person to another, (2) a breach of that duty, and (3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). "Proximate cause requires both cause in fact and foreseeability." *Id.* Foreseeability exists if the actor, as a person of ordinary intelligence, should have anticipated the dangers his negligent act creates for others. *Id.* "Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). "Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred." *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995).

To establish causation in a personal injury suit, a plaintiff must prove that the defendant's conduct caused an event and that the event caused the plaintiff to suffer compensable injuries. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995); *Benson v. Chalk*, 536 S.W.3d 886, 902 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). A jury may decide the required causal nexus between the event sued upon and the plaintiff's injuries when (1) general experience and common sense will

enable a layperson fairly to determine the causal nexus; (2) expert testimony establishes a traceable chain of causation from injuries back to the event; or (3) expert testimony shows a probable causal nexus. *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 478 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Causation cannot be established by mere conjecture, guess, or speculation. *McClure v. Allied Stores of Tex., Inc.*, 608 S.W.2d 901, 903 (Tex. 1980). However, proximate cause may be established by direct or circumstantial evidence and the reasonable inferences that may be drawn from that evidence. *Id.* at 903–04.

When a plaintiff claims damages for a medical condition, the cause of which is not within the common knowledge and experience of jurors, expert testimony is necessary to show that the defendant's conduct caused that condition. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015). A plaintiff is not required to show that the defendant's negligent act or omission was "the sole cause of [his] injury," only that it was a "substantial factor in bringing about the injury." *Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017). Further, "a medical causation expert need not disprov[e] or discredit[] every possible cause other than the one espoused by him." *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 218 (Tex. 2010) (internal quotations omitted). "Trial evidence generally includes evidence of the pre-occurrence condition of the injured person, circumstances surrounding the occurrence, and the course of the injured person's physical condition and progress

16

after the occurrence." *Guevara v. Ferrer*, 247 S.W.3d 662, 666–67 (Tex. 2007). "Evidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions." *Id*. at 668. The expert must base his opinion on facts or data perceived or reviewed during or before trial, and his opinion must rest on "reasonable medical probability." *LMC Complete Auto.*, 229 S.W.3d at 478. Reasonable probability is determined by the substance and context of the opinion and does not turn on semantics or on the use of a particular term or phrase. *Id.*

Here, Attalla sought to prove through the expert testimony of Dr. Bishai and Dr. Cotler that the collision, which occurred on February 23, 2013, caused him to suffer injuries to his back.

Dr. Bishai testified that he is board certified in pain management and that about 95 percent of his practice involves treating patients with spine issues. Bishai testified regarding his review of Attalla's medical records and from his own examination and treatment of Attalla after the collision.

Dr. Bishai testified that Attalla's March 4, 2008 MRI report states that his lumbar vertebrae were within normal limits, with the exception of L5-S1, which showed decreased "disc signal intensity," with "significant space narrowing" and "an approximately 6mm risk posterolateral disc protrusion impinging upon the right L5 nerve root and significant narrowing of the right neural foramen." Spondylosis

was also noted at L5, but with "no significant spondylolisthesis" and "no spinal stenosis."[8] Thus, Bishai explained, the space between Attalla's L5-S1 vertebrae was too narrow, he had a bulging disc, and the opening through which the nerves passed and traveled down to his legs was impinged and causing pain. Otherwise, Attalla's vertebrae and discs were "normally aligned." Further, Dr. K. Lee, in his April 3, 2008 report, opined that the exam and diagnostic studies of Attalla were consistent with "stable" L5-S1 spondylolisthesis, although he noted a "severe disk collapse at that level."

The emergency room records of Methodist Hospital West, where Attalla was taken by ambulance after the collision, reflect that he presented complaining of neck and back pain. The record of the exam on February 23, 2013 showed that Attalla had "Grade 1 anterolisthesis at L5-S1 with likely bilateral spondylolysis."[9] Thus, after the collision, Attalla's vertebrae were misaligned or displaced. Bishai noted that this condition was not present on Attalla's 2008 MRI, prior to the collision. And, the records of Dr. S. Lee, who treated Attalla three months after the collision,

---

[8] Again, Dr. Bishai testified that "spondylosis" refers to degenerative changes in the spine; "spondylolisthesis" refers to slipping of vertebrae; and "stenosis" is a narrowing of the spaces within the spine, which can place pressure on the nerves in the area.

[9] Drs. Bishai and Cotler testified that "spondylolysis" is a defect or fracture that can result in a vertebra slipping forward or backward over the bone below.

reflected that an MRI taken on May 23, 2013 showed a "Grade 1 anterolisthesis and advanced spondylosis and annular disc bulging."

Dr. Bishai testified that, based on a "reasonable medical probability," the collision "more likely than not" aggravated Attalla's pre-existing condition, i.e., "caused his stable spondylolisthesis to become unstable." Although Attalla had back problems in 2008, his condition was "stable." As a result of the collision, however, Attalla's back became "unstable," in that there is "motion" in his vertebrae. Bishai noted that the October 17, 2013 radiographs of Attalla's spine taken by Dr. Cotler reflect that Attalla has "lytic spondylolisthesis" and movement in his spine from 7 mm to 3 mm, which Bishai characterized as "huge[ly] unstable." Bishai explained that Attalla has "Grade 1 anterolisthesis," which is permanent. He noted that a patient with offset vertebrae that are unstable is at risk for cauda equina, a condition that can sever nerves and cause paralysis.

Dr. Cotler, a board-certified orthopedic surgeon, testified that he examined Attalla on October 17, 2013 for neck and back pain that Attalla attributed to the collision. Cotler diagnosed Attalla with "traumatic L5-S1 spondylolisthesis," which he explained meant that there was a "fracture of the pars interarticularis area of the L5 vertebral body that allowed the L5 vertebral body, or the block of bone, to separate from the posterior elements." He testified that, "based on a reasonable medical probability," "something caused the break in the bone; and that's trauma."

19

And, because of the separation, there was a "slippage of one block of bone on another," or "spondylolisthesis." Cotler also diagnosed Attalla with a disc herniation at L5-S1. Cotler noted that Attalla's March 4, 2008 MRI showed that he had spondylolysis and a disc lesion. He opined that Attalla had a "chronic condition that potentially could have had an acute situation superimposed on it."

Thus, Drs. Bishai and Cotler each testified based on Attalla's medical records, on the results of Attalla's pre- and post-collision MRIs and radiographs, and on their examinations of Attalla. Bishai testified that, before the collision, Attalla's vertebrae and discs were "normally aligned." And, after the collision, his vertebrae were misaligned. Bishai testified that, based on a "reasonable medical probability," the collision "more likely than not" aggravated Attalla's pre-existing condition, i.e., "caused his stable spondylolisthesis to become unstable." Cotler opined that the post-collision condition of Attalla's L5–S1 vertebrae was suggestive of "trauma."

During cross-examination, Dr. Bishai acknowledged that, although he had earlier testified, based on the 2008 MRI report, that Attalla did not have spondylolisthesis before the collision, Dr. K. Lee, an orthopedic surgeon who reviewed the 2008 MRI film, had concluded that Attalla had spondylolisthesis in 2008, prior to the collision. When presented with conflicting testimony, the jury may believe one witness and disbelieve others, and it may resolve inconsistencies in the testimony of any witness. *See McGalliard*, 722 S.W.2d at 697.

Based on the evidence of the temporal proximity of the onset of Attalla's symptoms, i.e., the debilitating pain in his back that began after the collision, together with the testimony of Drs. Cotler and Bishai about the pre- and post-collision MRI results, their examinations of Attalla, and their experience as a board-certified orthopedic surgeon and board-certified pain-management specialist, respectively, the jury could have reasonably inferred that Attalla's injuries were proximately caused by the collision and not simply by degeneration, the only other possible cause for his injuries suggested by the record. *See Guevara*, 247 S.W.3d at 666–67; *Williams v. Crawford*, No. 03-16-00696-CV, 2018 WL 1124306, at \*6 (Tex. App.—Austin Mar. 2, 2018, no pet.) (mem. op.) (holding temporal proximity of onset of patient's symptoms, together with physician's testimony that results from patient's MRI "showed that the herniation at L5–S1 was 'acute,' meaning recent, and suggestive of trauma," and his experience as an orthopedic surgeon, constituted sufficiently reliable basis from which doctor could opine that herniations were, "in reasonable medical probability, caused by the accident" and not by degeneration, as suggested); *see also Transcon. Ins. Co*., 330 S.W.3d at 218 (concluding that causation expert reasonably ruled out possibility that patient died solely from other conditions based on objective evidence of patient's good health before injury, his contraction of infection at site shortly afterward, and effect of infection on patient's health).

We conclude that the evidence supporting the jury's finding as to causation is not so weak as to render it clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We hold that factually sufficient evidence supports the jury's finding.

Accordingly, we overrule Hulsey's second issue.

## B. *Damages*

In his first issue, Hulsey argues that the evidence is legally and factually insufficient to support the jury's award of damages for future medical expenses, future physical pain and mental anguish, and future physical impairment.

Damages are measured by the question and instruction given in the court's charge. *Equistar Chems., L.P. v. Dresser-Rand Co*., 240 S.W.3d 864, 868 (Tex. 2007). Here, the trial court asked the jury to determine an amount that would reasonably compensate Attalla for any future medical expenses, future pain and mental anguish, and future physical impairment the jury found. The trial court specifically instructed the jury not to include any amount for any condition not resulting from the collision and not to include any amount for any condition existing before the collision, "except to the extent, if any, that such other condition was aggravated by any injuries that resulted from the [collision]." The trial court further instructed the jury to consider each element separately and not to include damages for one element in any other element. Unless the record demonstrates otherwise, we

22

must presume that the jury followed the instructions given in the charge. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 771.

### 1.    *Future Medical Expenses*

Hulsey argues that the evidence is legally insufficient to support the jury's award of $225,000 for future medical expenses because "there was no evidence that surgery would be necessary in the future within 'all reasonable probability'" and "there was no other component of the award."  Attalla further argues that the evidence supporting the damages is factually insufficient because the evidence showing a reasonable probability that medical expenses will be incurred in the future, i.e., the testimony of Drs. Cotler and Bishai, is not entitled to any weight.

To recover future medical expenses, a plaintiff is required to show a "reasonable probability" that medical expenses resulting from the injury will be incurred in the future and the reasonable costs of such care. *Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied).  "Texas follows the 'reasonable probability' rule for damages for future medical expenses." *Id.*; *see also Fisher v. Coastal Transp. Co.*, 230 S.W.2d 522, 523 (Tex. 1950) (holding that "reasonable probability rule" simply means that evidence must be presented that damages would "reasonably and probably result from the injury sustained").  While the preferred practice is to establish future medical expenses through expert medical testimony, such testimony is not required. *Antonov*, 168 S.W.3d at 908.  A jury may

23

award future medical expenses based on the nature of the plaintiff's injuries, medical care rendered to a plaintiff before trial, and the condition of the plaintiff at the time of trial. *Id.* An award of future medical expenses lies within the jury's sound discretion, and "appellate courts are particularly reluctant to disturb a jury's award of these damages." *Id.* An award of future damages in a personal injury case is always speculative to some degree. *Pipgras v. Hart*, 832 S.W.2d 360, 365 (Tex. App.—Fort Worth 1992, writ denied).

Dr. Cotler testified that he diagnosed Attalla with "traumatic L5-S1 spondylolisthesis," which he explained meant that there was a "fracture of the pars interarticularis area of the L5 vertebral body that allowed the L5 vertebral body, or the block of bone, to separate from the posterior elements." He explained that, "based on a reasonable medical probability," "something caused the break in the bone; and that's trauma." Attalla has a "weight bearing intolerance" or "vertical instability," which made it painful for him to sit or put weight on his spine, and a "painful range of motion of his low[er] back or lumbar spine." Cotler explained that surgery is appropriate when a patient has severe incapacitating pain that interferes with the quality of his life and nonoperative care has failed.

Dr. Cotler further testified that Attalla had quantified his neck pain as 10 out of 10, his leg pain as 8 out of 10, and his back pain as 7 out of 10. And, Attalla had previously undergone epidural steroid injections and physical therapy. Cotler noted

that, Attalla has a "structural abnormality," i.e., a fracture and slippage of bone, and that "structural abnormalities require structural solutions." Cotler testified that the expenses for surgery would total $225,000 and that Attalla would require six to twelve weeks of physical therapy. Attalla may later require additional surgeries and would "probably" have residual pain in the future. Cotler testified that each of his opinions was based on a "reasonable medical probability."

Dr. Bishai testified that Attalla has "Grade 1 anterolisthesis," which is permanent, will not heal on its own, and is likely to worsen over time. The pain management treatment that Bishai has administered to Attalla will not manage his pain indefinitely and there is "no nonsurgical way to fix this." Rather, "surgery is crucial." Attalla has "unstable" offset vertebrae and is at risk for cauda equina, a condition that can sever nerves and cause paralysis. Thus, "based on a reasonable medical probability," Attalla will need to have surgery to fix his issues "at some point in his life."

Attalla testified that he is "constantly" in pain, takes medication three to four times daily, requires assistance with "everything" he does, and cannot perform his usual duties at work. Although Attalla underwent physical therapy, it did not help his pain. He underwent five or six epidural steroid injections, which he noted were very painful procedures. Attalla explained: "I'm trying my best to cope with medication and function as much as I can because I'm terrified of the surgery" that

25

was recommended. Attalla's wife, Maryana, testified that Attalla is suffering from disabling back pain and is in constant pain. She testified that the epidural steroid injections are no longer working and "someday he will have to" have the surgery.

Based on the foregoing, the jury could have reasonably inferred that Attalla will have surgery in the future. *See McElroy v. Fitts*, 876 S.W.2d 190, 198 (Tex. App.—El Paso 1994, writ dism'd by agr.) (holding uncertainty about future surgery did not defeat factual sufficiency); *Strahan v. Davis*, 872 S.W.2d 828, 832–33 (Tex. App.—Waco 1994, writ denied) (holding possibility of future surgery did not defeat factual sufficiency). In addition, the jury could have reasonably found that $225,000 would be the cost of Attalla's future care based on Dr. Cotler's estimation of the cost of surgery.

Although Dr. Cotler also testified that Attalla, having not yet had the surgery, could have chosen to forego surgery and live with the pain, it was within the province of the jury to resolve any conflicts in the testimony. *See McGalliard*, 722 S.W.2d at 697 (holding that jury resolves conflicting testimony).

Hulsey asserts that Dr. Bishai was "not qualified to give an opinion" as to the "medical necessity" of surgery and thus his testimony did not constitute "proper expert testimony." Again, while the preferred practice is to establish future medical expenses through expert medical testimony, expert testimony is not required. *Antonov*, 168 S.W.3d at 908; *see also Bill Miller Bar-B-Q Enters., Ltd. v. Gonzales*,

26

No. 04-04-00747-CV, 2005 WL 2176079, at *2 (Tex. App.—San Antonio Aug. 24, 2005, pet. denied) (mem. op.) ("No precise evidence is required," and "[t]estimony of a 'reasonable medical probability' by a medical expert is not a requisite to recovery [of] future medical expenses."). Rather, a jury may award future medical expenses based on the nature of the plaintiff's injuries, medical care rendered to a plaintiff before trial, and the condition of the plaintiff at the time of trial. *Antonov*, 168 S.W.3d at 908.

We conclude that there is more than a scintilla of evidence to support the jury's award of damages in the amount of $225,000 for future medical expenses. *See City of Keller*, 168 S.W.3d at 810; *Antonov*, 168 S.W.3d at 908 ("Anything more than a scintilla of evidence is legally sufficient to support the finding."). We further conclude that the evidence supporting the jury's award is not so weak as to render the award clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we hold that legally and factually sufficient evidence supports the jury's award of $225,000 in future medical expenses.

We overrule this portion of Hulsey's first issue.

2. *Future Physical Pain and Mental Anguish*

Hulsey next argues that the evidence is legally and factually insufficient to support the jury's award of $175,000 for future physical pain and mental anguish damages.

27

"The process of awarding damages for amorphous, discretionary injuries such as . . . pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Figueroa v. Davis*, 318 S.W.3d 53, 62 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Once the existence of some pain has been established, "there is no objective way to measure the adequacy of the amount awarded as compensation." *Id.* "The amounts of damages awarded for pain and suffering . . . are necessarily speculative and each case must be judged on its own facts." *Id.* Physical pain and suffering may be established by circumstantial evidence. *Id.* "The duration of the pain . . . is an important consideration." *Id.* "[I]t is particularly within the jury's province to resolve these matters and determine the amounts attributable thereto." *Id.*

To support an award of mental anguish, a party must present either direct evidence of the nature, duration, and severity of his mental anguish, thereby establishing a substantial interruption in his daily routine, or circumstantial evidence of a high degree of mental pain and distress that is greater in degree than mere worry, anxiety, vexation, embarrassment, or anger. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995); *Thomas v. Uzoka*, 290 S.W.3d 437, 455 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (claimant must demonstrate "high degree of mental suffering"). Further, evidence of the existence of compensable mental anguish is not enough; there must also be some evidence to justify the amount awarded. *Saenz*

*v. Fid. Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). While the impossibility of an exact evaluation of mental anguish requires that fact-finders be given a measure of discretion in finding damages, fact-finders cannot simply pick a number. *Id.* They must find an amount that "would fairly and reasonably compensate" for the injury. *Id.*

Here, the trial court's charge instructed the jury that the term "mental anguish" means "impl[ying] a relatively high degree of mental pain and distress. It is more than mere disappointment, anger, resentment or embarrassment, although it may include all of these."

Attalla testified that, since the collision, he is "constantly" in pain, takes medication three to four times daily, and requires assistance with "everything" he does. Attalla explained: "I'm trying my best to cope with medication and function as much as I can because I'm terrified of the surgery." Attalla noted that his orthopedic surgeon, Dr. Cotler had described the procedure as "like a C-section," involving an incision through his abdomen and another through his back, and placing his spine in a "cage." The jury had the benefit of observing Attalla as he testified and could assess his emotional demeanor; this afforded some insight into the mental anguish he was suffering. *See Plasencia v. Burton*, 440 S.W.3d 139, 149 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Attalla's wife, Maryana, also testified

29

that Attalla has disabling back pain and is in constant pain. And, he is "terrified" about undergoing the surgery.

Dr. Bishai testified that Attalla's "Grade 1 anterolisthesis" is a permanent condition that will cause him "permanent lifelong pain," regardless of whether he has the surgery. Dr. Cotler testified, "based on a reasonable medical probability," that even if Attalla undergoes the recommended surgery, he will "probably" have residual pain in the future. He may also have stiffness and residual nerve damage.

From the evidence, the jury could have reasonably inferred that Attalla will suffer physical pain and mental anguish in the future. *See Figueroa*, 318 S.W.3d at 62–63; *see, e.g.*, *Flynn v. Racicot*, No. 09-11-00607-CV, 2013 WL 476756, at *6 (Tex. App.—Beaumont Feb. 7, 2013, no pet.) (mem. op.) ("Evidence of continuing pain may support an award of future physical pain and future mental anguish."); *Wal–Mart Stores, Inc. v. Ortiz*, No. 13-98-518-CV, 2000 WL 35729388, at *7–8 (Tex. App.—Corpus Christi Aug. 3, 2000, pet. denied) (not designated for publication) (holding that evidence that plaintiff continued to have leg pain and trouble walking, among other things, held factually sufficient to support awards for future physical pain and mental anguish). Because damages for mental anguish are "unliquidated and incapable of precise mathematical calculation, the [fact-finder] is given significant discretion in fixing the amount of the award," as long as it has some evidentiary support. *Uzoka*, 290 S.W.3d at 454.

We conclude that the testimony of Attalla, Maryana, and Drs. Bishai and Cotler constitutes more than a scintilla of evidence supporting the jury's award of $175,000 for Attalla's future pain and mental anguish. *See City of Keller*, 168 S.W.3d at 810; *Antonov*, 168 S.W.3d at 908 ("Anything more than a scintilla of evidence is legally sufficient to support the finding."). We further conclude that the jury's damages award for future physical pain and mental anguish is not so against the great weight and preponderance of the evidence that it is manifestly unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's award of $175,000 for future physical pain and mental anguish.

We overrule this portion of Hulsey's first issue.

3.      *Future Physical Impairment*

Hulsey further argues that the evidence is legally and factually insufficient to support the jury's award of $200,000 for future impairment because the award is repetitive of the jury's award for physical pain and mental anguish. Hulsey asserts that Attalla presented no evidence of a "separate and distinct loss."

"Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle." *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 554 (Tex. App.—Fort Worth 2006, pet. denied); *see Doctor v. Pardue*, 186 S.W.3d 4, 18 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A

31

plaintiff generally must show that his physical-impairment damages are substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity. *Burry*, 203 S.W.3d at 555; *see Golden Eagle Archery, Inc*., 116 S.W.3d at 772 (claimant "should not be compensated more than once for the same elements of loss or injury"). The process of awarding damages for amorphous, discretionary injuries such as physical impairment is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Ten Hagen Excavating, Inc. v. Castro-Lopez*, 503 S.W.3d 463, 486 (Tex. App.—Dallas 2016, pet. denied). Accordingly, the trier of fact is given discretion when determining such damages. *Id.*

Here, the trial court's charge defined the term "physical impairment" as "the restriction of activities caused by the injury." It noted that "[t]he effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity."

Attalla testified that, after the collision in 2013, his quality of life "changed dramatically." He requires assistance with "everything" he does. He has a master's degree in theology and used to perform services and lead his congregation in hymns. Since the collision, he can no longer perform his church duties. He can no longer play with his children or with the children at his Sunday school as he did prior to the collision.

32

Maryana testified that Attalla was the head deacon at their church, led liturgies lasting from three to four hours, and was head of the Sunday school services for high school students. He conducted training every Friday for an hour or two and went on retreats. During family vacations, he used to participate in activities such as walking for long distances, rafting, ziplining, and going on rides at amusement parks. At home, he played basketball with the children, went running with Maryana, and rode bicycles with the family. Since the collision, however, Attalla can no longer participate in these activities as he had or at all. Just riding in a car is an issue. Attalla cannot perform any of his duties at the church because he cannot stand long enough. He also cannot attend liturgy because he cannot sit long enough. Attalla has to constantly shift his position while he sits. Church was his "passion," and he has had to resign. She noted that, during a recent family trip to Costa Rica, she and the children went ziplining, while Attalla had to stay behind.

Attalla's complaints, including his loss of the ability to enjoy church, time with his family, and recreational activities, extend beyond pain and suffering and support recovery for future impairment. *See Tri-State Motor Transit Co. v. Nicar*, 765 S.W.2d 486, 493 (Tex. App.—Houston [14th Dist.] 1989, no pet.) (holding that testimony showing that prior to accident plaintiff was active and athletic person who regularly participated in sports, and after his injuries was unable to enjoy recreational sports activities, extended beyond pain and suffering and supported recovery for

33

future physical impairment); *Allen v. Whisenhunt*, 603 S.W.2d 242, 244 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ dism'd) (holding that evidence of plaintiff's inability to play basketball or engage in other strenuous tasks for his own benefit or enjoyment was sufficient to support award of damages for future physical impairment).

From the evidence, the jury could have reasonably inferred that Attalla will suffer physical impairment in the future. *See, e.g.*, *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 519–20 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (holding evidence legally and factually sufficient to support the jury's award of $420,000 for future physical impairment); *Marquette Transp. Co. Gulf–Inland, LLC v. Jackson*, No. 01–10–01025–CV, 2012 WL 1454476, at *13–14 (Tex. App.—Houston [1st Dist.] Apr. 26, 2012, no pet.) (mem op.) (holding evidence plaintiff "permanently limited" and no longer "able to participate in the same activities that he pursued before he was injured, including everything from standing in order to cook and clean to playing basketball" sufficient to support jury's award of $500,000 for future physical impairment); *Figueroa*, 318 S.W.3d at 64–65 (upholding award for past and future physical impairment for plaintiff with dental injuries because he subsequently had to limit number and types of food he ate and "could not eat some of the foods that he loved" for several years).

We conclude that the testimony of Attalla and Maryana constitutes more than a scintilla of evidence supporting the jury's award of damages to Attalla's for future impairment. *See City of Keller*, 168 S.W.3d at 810; *Antonov*, 168 S.W.3d at 908 ("Anything more than a scintilla of evidence is legally sufficient to support the finding."). We further conclude that the jury's award to Attalla for future impairment is not so against the great weight and preponderance of the evidence that it is manifestly unjust. *See Cain*, 709 S.W.2d at 176. Accordingly, we hold that the evidence is legally and factually sufficient to support the jury's award of $200,000 for future physical impairment.

We overrule the remaining portion of Hulsey's first issue.

### Excessive Damages

In his fourth issue, Hulsey complains that the jury's damages findings are excessive and require a remittitur or new trial. He asserts that the damages awarded for future medical expenses are based on a future surgery, which was "only a possible treatment option." And, the jury awarded damages for future pain and mental anguish and for physical impairment "as if Attalla would receive no benefit from the future surgery."

We review an excessive-damages complaint for factual sufficiency of the evidence, using the guidelines identified above. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). Having concluded above that factually sufficient

35

evidence supports the jury's awards for future medical expenses, future physical pain and mental anguish, and future physical impairment, we conclude that the damages awards are not excessive. *See PNS Stores, Inc.*, 484 S.W.3d at 519–20; *Casas v. Paradez*, 267 S.W.3d 170, 191 (Tex. App.—San Antonio 2008, pet. denied) (holding jury's verdict was not excessive because factually sufficient evidence supported jury's verdict). Because there was evidence to account for the jury's verdict, we cannot say that the damages awarded were "so flagrantly excessive that [they] cannot be accounted for on any other ground." *PNS Stores, Inc.*, 484 S.W.3d at 519–20.

We overrule Hulsey's fourth issue.

### Evidence of Insurance

In his third issue, Hulsey argues that the trial court erred by admitting "evidence of the existence of [his liability] insurance." *See* TEX. R. EVID. 411. He asserts that such evidence led to the rendition of an improper and excessive verdict and that "[h]arm is presumed." Attalla argues that the trial court did not err because Hulsey "opened the door" to such testimony and also "interjected the issue of insurance into the trial." Attalla asserts that Hulsey failed to preserve error and that, "other than vaguely alleging . . . that harm is 'presumed,' Hulsey points to nothing in the record . . . to meet his burden" to demonstrate that the alleged error probably led to the rendition of an improper judgment.

36

### Standard of Review

The decision to admit or exclude evidence lies within the sound discretion of the trial court. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *Benson v. Chalk*, 536 S.W.3d 886, 894 (Tex. App.—Houston [1st Dist.] 2017, pet. denied). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to guiding rules or principles. *Bowie Mem. Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We will uphold a trial court's evidentiary ruling if any legitimate ground supports the ruling, even if the ground was not raised in the trial court. *Hooper v. Chittaluru*, 222 S.W.3d 103, 107 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). To demonstrate reversible error in the admission of evidence, an appellant must show (1) that the trial court's ruling was erroneous and (2) that the error was calculated to cause, and probably did cause, the rendition of an improper judgment. *Benson*, 536 S.W.3d at 904; *see also* TEX. R. APP. P. 44.1(a); *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 136 (Tex. 2012).

In determining whether erroneously admitted evidence probably resulted in the rendition of an improper judgment, we examine "the entire case from voir dire to closing argument, considering the evidence as a whole, the strength or weakness of the case, and the verdict." *U-Haul Int'l, Inc.*, 380 S.W.3d at 136. We look to the role that the evidence played in the context of the trial and the efforts made by counsel to emphasize the erroneous evidence, as well as whether there was contrary

37

evidence that the improperly admitted evidence was calculated to overcome. *Id.*

"Typically, a successful challenge to a trial court's evidentiary rulings requires the

complaining party to demonstrate that the judgment turns on the particular evidence

excluded or admitted." *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220

(Tex. 2001).

### *Legal Principles*

Texas Rule of Evidence 411 provides:

Evidence that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or, if disputed, proving agency, ownership, or control.

TEX. R. EVID. 411. Rule 411 prohibits parties from inquiring about the existence of

insurance to show that the insured was negligent or otherwise at fault to avoid

improper inferences that one who has insurance is more likely than others to be

negligent because he is protected by insurance and that an insurer could afford to

pay any judgment against its insured. *See AccuBanc Mortg. Corp. v. Drummonds*,

938 S.W.2d 135, 151 (Tex. App.—Fort Worth 1996, writ denied) (noting that jury

is "more apt to render a judgment against a defendant, and for a larger amount, if it

knows that the defendant is protected by insurance"). Thus, generally, it is error for

insurance coverage of either party to be mentioned by the other party during the trial

of a personal injury cause of action. *Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613,

625 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). If insurance is mentioned, the trial court may either instruct the jury not to consider the improper statement or declare a mistrial. *Id.*

Otherwise inadmissible evidence may be offered, however, if a party opens the door to its admission by offering evidence of a similar character. *Sw. Elec. Power Co. v. Burlington N. R.R.*, 966 S.W.2d 467, 473 (Tex. 1998) ("A party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character." (quoting *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex. 1984)). And, otherwise inadmissible evidence may be admitted to correct a false impression left by the questioning of a witness. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000). Evidence of collateral matters may also be admitted if a party opens the door by injecting such matters into the lawsuit. *See Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). "Once a party opens the door . . . the opposing party may offer rebuttal evidence on the collateral issue." *Id.*

In *Canyon Vista Property Owner's Association v. Laubach*, the court of appeals held that the trial court did not err in admitting evidence of insurance because the defendant had opened the door to the evidence. No. 03-11-00404-CV, 2014 WL 411646, at *9 (Tex. App.—Austin Jan. 31, 2014, no pet.) (mem. op.). There, the

defendant condominium association testified during direct examination that, although it carried liability insurance, the plaintiff unit-owner's asserted damages would be borne by other unit owners. *Id.* at *7. During cross-examination, the plaintiff attempted to "further probe" the insurance issue, and the defendant objected on the ground that the evidence was inadmissible. *Id.* at *8. At a bench conference, the plaintiff argued that the defendant had opened the door by telling the jury that the damages would be borne exclusively by other unit owners. *Id.* After the trial court overruled the objection, plaintiff's counsel resumed questioning about the association's liability coverage. *Id.*

On appeal in *Canyon Vista*, the court held that the defendant had opened the door to being cross-examined about its insurance by expressly testifying during direct that it carried insurance. *Id.* at *9. And, once the door was opened, the plaintiff was entitled to present evidence of the defendant's insurance to correct any misimpression left with the jury that the damages would fall to other unit owners. *Id.* The court further held that, even if the trial court had erred in admitting evidence of insurance, such error was harmless because the association was allowed to rebut such evidence with evidence that the insurer had already denied its claim; the trial court's charge to the jury contained a limiting instruction; and the jury's findings as to liability and damages were sufficiently supported by the evidence. *Id.* The court

noted that the jury did not award the plaintiff the full amount of the damages he sought and that the "insurance policy limits were never disclosed to the jury." *Id.*

*Analysis*

Here, during defense counsel's cross-examination of Attalla, the following colloquy occurred:

| | |
|---|---|
| [Hulsey's counsel]: | So isn't it true that you had numbness and tingling in your legs for two years prior to April the 3rd, 2008? |
| [Attalla]: | Very minor, yes. |
| [Hulsey's counsel]: | Yes, okay. Isn't it true that it wasn't until you and your lawyer discovered that we discovered these prior medical records showing these back treatment and injuries and problems that you decided to come here today and admit the truth? |
| [Attalla]: | It's not true. |
| [Hulsey's counsel]: | So up until this point where you realized we knew about these prior injuries and prior medical condition, *you wanted Mr. Hulsey to pay for that prior back problem, didn't you*? |
| [Attalla]: | Didn't ask him anything. |
| [Hulsey's counsel]: | *But in this lawsuit you're asking Mr. Hulsey to pay for damage he did not cause, aren't you*? |
| [Attalla]: | Absolutely not. |

(Emphasis added.) At a bench conference, Attalla asserted that this line of questioning had "opened the door to insurance." And, the trial court concluded, "Okay. I'll let you play with that. It's your—it's your appeal."

41

Subsequently, during re-direct examination of Attalla, Attalla's counsel expressly raised the matter of Hulsey's insurance before the jury, as follows:

| | |
|---|---|
| [Attalla's counsel]: | So, [Attalla], remember when the defense lawyer asked if we were trying to make Mr. Hulsey pay for your injuries? |
| [Attalla]: | Yes. |
| [Attalla's counsel]: | We're not trying to make Mr. Hulsey pay at all. *We're trying to make his insurance company pay, true?* |
| [Hulsey's counsel]: | Objection, Your Honor. |
| [Trial Court]: | I ruled on that over here. Overruled. I think you opened the door. |
| [Attalla's counsel]: | We're not trying to take a dime from Mr. Hulsey. *We want his insurance company to pay for what he had in the car crash, true?* |
| [Attalla]: | True. |

(Emphasis added.) As noted, the trial court overruled Hulsey's objection[10] and concluded that he had opened the door to evidence of his insurance.

Next, during re-cross examination of Attalla, *Hulsey's* counsel raised the fact of his insurance and the amount of his coverage:

| | |
|---|---|
| [Hulsey's counsel]: | Do you understand you've sued Mr. Hulsey for a million dollars—for up to a million dollars, correct? |
| [Attalla]: | Yes. |
| [Hulsey's counsel]: | You understand he has nowhere near that coverage in the insurance, correct? |

---

[10] Later, Hulsey moved for a mistrial on the ground that he had not "open[ed] the door" to evidence of his insurance. And, the trial court denied the motion for mistrial.

42

. . . .

| | |
|---|---|
| [Attalla]: | I don't know. |

During re-direct examination of Attalla, Attalla's counsel attempted to rebut Hulsey's assertion that he lacked sufficient coverage:

| | |
|---|---|
| [Attalla's counsel]: | Do you understand that he has unlimited coverage now because they had the opportunity to settle— |
| [Hulsey's counsel]: | Objection, Your Honor. They're—this is— |
| [Trial Court]: | Okay. Never mind. We'll leave it there. Any other questions about the . . . . |
| [Attalla's counsel]: | Oh, yes— |
| [Trial Court]: | —unrelated to insurance? |
| [Attalla's counsel]: | The amount of insurance is not true. It's unlimited. |
| [Trial Court]: | I understand your argument. |
| [Attalla's counsel]: | Thank you. |

Although Hulsey objected, he did not obtain a ruling from the trial court. *See* TEX. R. APP. P. 33.1(a) (providing that preservation of error requires objection and ruling).

Later, during cross-examination of Hulsey, Attalla's counsel asked why Hulsey's family was present during trial, noting: "None of your money is at risk; it's your insurance company." Although Hulsey objected, the trial court did not rule on his objection. *See id.*

Finally, during closing argument, Attalla's counsel emphasized the insurance matter as follows:

43

| | |
|---|---|
| [Attalla's counsel]: | . . . . [Y]ou have the power to give Mr. Hulsey a pass. You do. You can say for whatever reason, you know what, Mr. Hulsey, these safety rules apply to everybody except you. We're going to give you a pass. Maybe because you brought your family down here every single day of the trial even though *he doesn't have one single dime of his own money at risk.* |
| [Hulsey's counsel]: | Objection, Your Honor. Making an improper jury argument. |
| [Trial Court]: | We've already covered that. That's in evidence. So the objection's overruled. |
| [Attalla's counsel]: | The evidence is that – and you guys got to look at something that a lot of juries don't get, that *he's covered by insurance. Insurance companies like to hold individuals up like this, like a human shield to try to protect themselves and make juries think that it's really him who's paying the money, but it's not.* |
| [Hulsey's counsel]: | Objection, Your Honor. Again, making an improper jury argument. |
| . . . . | |
| [Trial Court]: | The objection's overruled. |
| . . . . | |
| [Attalla's counsel]: | *We don't want you to give one single dime more than you would otherwise give because he's covered by insurance. That would not be right. That would not be a pristine verdict. We just don't want you to give one single dollar less because they act like he's not covered by insurance.* |
| [Hulsey's counsel]: | Objection, Your Honor. |
| [Attalla's counsel]: | That would not be a pristine verdict. |
| [Trial Court]: | All right. Sustained. Move on, please. |

(Emphasis added.) As noted, Hulsey objected on the ground of improper jury argument, and the trial court overruled his first two objections. After the trial court sustained his third objection, Hulsey did not request a limiting instruction or timely move for a mistrial. *See In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 760 (Tex. 2013); *Hoover v. Barker*, 507 S.W.2d 299, 306 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.) (holding that motion for mistrial raised in motion for new trial was untimely).

Even were we to conclude that the trial court erred in finding that Hulsey opened the door to evidence of his insurance and erred in allowing the insurance matter to be raised before the jury, Hulsey has not demonstrated that it probably caused the rendition of an improper judgment in this case. *See* TEX. R. APP. P. 44.1(a)(1); *U-Haul Int'l, Inc.*, 380 S.W.3d at 136.

Hulsey asserts on appeal, without citation to authority, that "[h]arm is presumed." The injection of insurance into a trial does not always require reversal; rather, it is incumbent upon the complaining party to demonstrate harm. *United Cab Co., Inc. v. Mason*, 775 S.W.2d 783, 786 (Tex. App.—Houston [1st Dist.] 1989, writ denied) ("Even if the injection of insurance into a trial is always error, that alone does not require reversal contrary to defendants' assertion that it is reversible error per se."); *see also Michaelski v. Wright*, 444 S.W.3d 83, 92 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that, notwithstanding repeated injections of

45

insurance into case, harm not shown); *Canyon Vista Prop. Owner's Ass'n*, 2014 WL 411646, at \*9 (holding that, even if trial court erred in admitting evidence of insurance, harm not shown). In *Dennis v. Hulse*, the Texas Supreme Court responded to a similar argument as follows:

> Under our practice an appellate court is not authorized to reverse merely because the record discloses some error that is reasonably calculated to cause a miscarriage of justice. The party appealing must also show that it probably did cause the rendition of an improper judgment in the case.

362 S.W.2d 308, 309 (Tex. 1962). Thus, Hulsey has the burden demonstrate that the error probably caused the rendition of an improper judgment in this case. *See id.*

In his brief, Hulsey simply ties his harm to the sufficiency points previously raised and addressed by stating:

> Here, the consequences of the district court's evidentiary ruling . . . was to skew the evidence on the question of the cause-in-fact element of tort liability and the nature and extent of alleged future damages, all of which Hulsey now challenges for insufficient evidence.

Having examined the evidence and concluded above that the jury's findings as to causation and damages are supported by legally and factually sufficient evidence, we conclude that Hulsey has not demonstrated that the interjection of his insurance probably caused the rendition of an improper judgment in this case. *See Michaelski*, 444 S.W.3d at 92 (concluding, in similar context, that, notwithstanding that "all parties made repeated reference[s]" to insurance at trial, harm not shown, in part, because evidence was legally and factually sufficient to support jury's

46

verdict); *Canyon Vista Prop. Owner's Ass'n*, 2014 WL 411646, at *9 (holding harm from admitting evidence of insurance not shown, in part, because legally and factually sufficient evidence supported jury's findings as to liability and damages); *see also U-Haul Int'l, Inc.*, 380 S.W.3d at 136 (considering "evidence as a whole, the strength or weakness of the case, and the verdict"). Importantly, Hulsey has not demonstrated that the judgment turned on the evidence of his insurance. *See Interstate Northborough P'ship*, 66 S.W.3d at 220 ("Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence . . . admitted."). Notably, the jury awarded Attalla less than the full amount of the damages he sought. *Canyon Vista Prop. Owner's Ass'n*, 2014 WL 411646, at *9 (holding harm from admission of insurance evidence not shown, in part, because jury awarded less than full amount of damages sought).

Considering the entire case, as we must, we further note that Attalla's only mention of insurance during voir dire came after a veniremember stated that he had previously worked as an insurance adjuster. *See U-Haul Int'l, Inc.*, 380 S.W.3d at 136 (examining "the entire case from voir dire to closing argument"). Attalla's counsel then asked veniremembers whether anyone else had "ever been an insurance adjuster," and Hulsey did not object. *See* TEX. R. APP. P. 33.1(a); *Haryanto v. Saeed*, 860 S.W.2d 913, 918 (Tex. App.—Houston [14th Dist.] 1993, writ denied)

(requiring objection to preserve error with respect to statements and questions by appellee's counsel during voir dire). In addition, as discussed above, the record shows that Hulsey himself also referenced his insurance in front of the jury, went further and argued about the amount of his coverage, and subsequently allowed Attalla to make additional references to insurance without preserving error on the ground he raises on appeal.[11] *See* TEX. R. APP. P. 33.1(a); *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) (holding that error in admission of testimony deemed harmless and waived if objecting party subsequently allows same or similar evidence to be introduced); *see, e.g.*, *Michaelski*, 444 S.W.3d at 91 (holding no harm shown, in part, because "all parties made repeated reference" to insurance at trial, appellants failed to preserve error with respect to all references,

_____

[11] Although, during Attalla's closing argument, Hulsey preserved error with respect to his objections on the ground of improper jury argument, he expressly presents an evidentiary point on appeal, under Texas Rule of Evidence 411, and not an improper-jury-argument point. *See Wohlfhart v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding that party's challenge on appeal must be consistent with his objection at trial); *see, e.g.*, *Taylor v. Am. Fabritech, Inc.*, 132 S.W.3d 613, 625 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (addressing evidentiary point under Rule 411 and issue asserting improper jury argument as separate issues with distinct elements). Further, an appellant asserting an issue of improper jury argument must show, inter alia, incurable harm. *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839 (Tex. 1979). A claim of "incurable jury argument" must be raised in motion for new trial if not otherwise ruled on in the trial court. *See* TEX. R. CIV. P. 324(b)(5). Hulsey does not argue incurable harm on appeal, and the record does not reflect that he did so in the trial court. *See Nguyen v. Myers*, 442 S.W.3d 434, 439–42 (Tex. App.—Dallas 2013, no pet.) (addressing evidentiary point under Rule of Evidence 411 and holding claim of improper jury argument waived).

and appellants' references were more prejudicial than those of appellees); *Gates v. Quality Pontiac-Buick-GMC, Inc.*, No. C14-86-933-CV, 1987 WL 18079, at \*2–3 (Tex. App.—Houston [14th Dist.] 1987, writ denied) (not designated for publication) (holding no harm shown, in part, because "appellant's own attorney assisted in raising the issue of insurance" and both parties interjected issue into trial); *Kenneth H. Hughes Interests, Inc. v. Westrup*, 879 S.W.2d 229, 238 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding no harm shown from evidence of insurance because appellants' own counsel "elicited some of this evidence" and party may not complain on appeal that evidence was improperly admitted when party itself elicited same or similar evidence).

Although we do not condone Attalla's counsel's statements in his closing argument regarding Hulsey's insurer, we do not conclude that the trial court's evidentiary ruling, the issue that Hulsey presents in this appeal, caused reversible error in this case. *See* TEX. R. APP. P. 44.1; *see, e.g.*, *Alvarez, v. Driscoll Found. Children's Hosp.*, No. 13-98-152-CV, 2000 WL 35729205, at \*3 (Tex. App.—Corpus Christi Dec. 7, 2000, pet. denied) (not designated for publication) ("While we do not condone defense counsel's tactics, . . . we do not believe that the interjection of insurance caused reversible error in this case.").

We hold that even if the trial court erred by allowing the matter of Hulsey's insurance to be interjected at trial, Hulsey has not demonstrated that the error probably caused the rendition of an improper judgment in this case.

We overrule Hulsey's third issue.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.