Anton **ANTONOV** and **Tanev &
Son Trucking, Appellants,**

v.

Sonja **WALTERS** and **Shawn Brown, in
his Capacity as Chapter 7 Trustee for
the Bankruptcy Estate of Delbert and
Sonja Walters, Appellees.**

No. 2–04–255–CV.

Court of Appeals of Texas,
Fort Worth.

June 30, 2005.

Downs & Stanford, P.C., M. Gaddy Wells, Dallas, TX, for Appellant.

Wells, Purcell, Kraatz & Brookman, Davis Purcell, Fort Worth, TX, for Appellee.

PANEL A: CAYCE, C.J.; HOLMAN, J.; and SAM J. DAY, J. (Retired, Sitting by Assignment).

## OPINION

JOHN CAYCE, Chief Justice.

Anton Antonov and Tanev & Son Trucking appeal from an adverse judgment for Sonja Walters and Shawn Brown in his capacity as chapter 7 trustee for the bankruptcy estate of Delbert and Sonja Walters. In three issues, appellants complain that the trial court's judgment is void because Sonja's lack of standing to sue deprived the trial court of subject matter jurisdiction; the trial court erred by denying appellants' motion to strike Brown's intervention in the lawsuit; and the evidence is legally and factually insufficient to support the jury's damages award for future medical expenses. We will affirm.

■ On January 31, 2001, Antonov and Sonja were involved in a motor vehicle accident during which Sonja was injured. On September 27, 2001, Sonja and her husband Delbert filed a chapter 7 bankruptcy proceeding. Brown was appointed chapter 7 trustee for the Walterses' bankruptcy estate. The Walterses listed on their personal property schedule Sonja's personal injury claims against appellants. On October 25, 2001, the Walterses claimed as exempt from the bankruptcy estate the following claims resulting from the accident: a personal injury claim valued at $17,425 and a "los[t] wages claim" of unlimited value. No objections were made to these exemptions.[1]

---

1. Our recitation of the facts is not based on Brown's affidavit, which is attached to appellees' brief, because that affidavit is not part of the record. *See* Tex.R.App. P. 38.1(h) (providing that argument must be supported by citations to appellate record); *Till v. Thomas*, 10 S.W.3d 730, 733 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (stating that appellate court cannot consider documents attached to appellate brief that do not appear in record). At

Thereafter, on August 15, 2002, Sonja sued appellants for damages she allegedly sustained in the January 2001 accident. Brown was not a party to the lawsuit when it was filed, nor did he participate in the subsequent trial.

On April 21, 2004, a jury found that Antonov's negligence had caused the accident and Sonja's injuries and awarded her $745,790 in past and future damages. Six days later, Brown petitioned for the first time to intervene in the lawsuit on behalf of the bankruptcy estate. Over appellants' objection, the trial court rendered judgment that appellants were jointly and severally liable to both Sonja and Brown for the full amount of the jury's verdict plus interest and court costs. The trial court overruled appellants' postjudgment motions, including a plea to the jurisdiction based on Sonja's alleged lack of standing and a motion to strike Brown's intervention, and this appeal followed.

In their first issue, appellants contend that the trial court erred in overruling their plea to the jurisdiction and in refusing to dismiss the case for want of jurisdiction. Appellants assert that Sonja's lack of standing deprived the trial court of subject matter jurisdiction and rendered its judgment void.

A plaintiff must have standing to bring a lawsuit.[2] The issue of standing focuses on whether a party has a sufficient relationship with the lawsuit to have a justiciable interest in its outcome.[3] A plaintiff has standing when she is personally aggrieved, regardless of whether she is acting with legal authority.[4] Thus, in Texas, the test for standing requires that there be (1) a real controversy between the parties (2) that will be actually determined by the judicial declaration sought.[5] Standing is a component of subject matter jurisdiction and may be raised at any time.[6] We apply a de novo standard of review to the trial court's determination regarding standing.[7]

When a debtor files a bankruptcy petition, all of her property—including any legal claims that belonged to the debtor before the petition was filed—becomes property of a bankruptcy estate.[8] Once a

appellees' request, however, we take judicial notice of the facts set forth in the certified record from the Walterses' bankruptcy proceeding, which appellees have filed as a separate appendix. *See* Tex.R. Evid. 201(d).

2. *Coastal Liquids Transp., L.P. v. Harris County Appraisal Dist.*, 46 S.W.3d 880, 884 (Tex. 2001).

3. *Austin Nursing Ctr. v. Lovato*, 48 Tex. Sup. Ct. J. 624, 626, 2005 WL 1124764, at *3 (Tex. May 13, 2005) (citing 6A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1559, at 441 (2d ed.1990)).

4. *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex.1996). In contrast, capacity is a procedural issue dealing with the personal qualifications of a party to litigate. *Austin Nursing Ctr.*, 48 Tex. Sup. Ct. J. at 626, 2005 WL 1124764, at *3 (citing 6A Wright, Miller & Kane, Federal Practice &

Procedure: Civil 2d § 1559, at 441). A party has *capacity* when she has the legal authority to act, regardless of whether she has a justiciable interest in the controversy. *Nootsie, Ltd.*, 925 S.W.2d at 661.

5. *Id.* at 662.

6. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445–46 (Tex.1993); *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 670 (Tex. App.-Fort Worth 2001, pet. denied).

7. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *City of Arlington v. Scalf*, 117 S.W.3d 345, 347 (Tex.App.-Fort Worth 2003, pet. denied).

8. 11 U.S.C.A. § 541 (West 2004); *Taylor v. Freeland & Kronz*, 503 U.S. 638, 642, 112 S.Ct. 1644, 1647, 118 L.Ed.2d 280 (1992);

claim belongs to the bankruptcy estate, the bankruptcy trustee, as the estate representative, has exclusive standing to assert the claim.[9]

Nonetheless, a debtor may file a list of property that the debtor claims is exempt from the bankruptcy estate.[10] Unless a party in interest objects, "the property claimed as exempt on such list is exempt."[11] Thereafter, the debtor's entitlement to the exemption is invulnerable to attack, regardless of whether the debtor had a colorable statutory basis for claiming the exemption.[12] Further, "[i]t is well-settled law that the effect of this self-executing exemption is to remove property from the [bankruptcy] estate and to vest it in the debtor."[13] These principles apply to both pending and potential causes of action claimed as exempt.[14]

Applying these principles to this case, we hold that Sonja had standing to sue appellants. Sonja was personally aggrieved by the accident and, in October 2001, she listed as exempt her personal injury and "los[t] wages" claims resulting from the accident. No one ever objected to those exemptions. Therefore, those claims became exempt,[15] were removed from the bankruptcy estate, and were re-vested in Sonja.[16] Once the claims were no longer part of the bankruptcy estate, Sonja had a real, justiciable interest in the outcome of the controversy between her and appellants, which could be actually determined by the judicial declaration she sought when she filed suit in August 2002.[17]

Appellants contend that Sonja "did not claim any part of the personal injury cause of action in her exemptions," but only her right to receive payment on her claims. To support this contention, appellants point out that Sonja listed bankruptcy code section 522(d)(11)(D)-(E) as statutory authority for exempting her claims. These subsections provide that a debtor may exempt from the bankruptcy estate the right to receive payment on account of personal

---

*Douglas v. Delp,* 987 S.W.2d 879, 882 (Tex. 1999).

9. 11 U.S.C.A. § 323(a); *Douglas,* 987 S.W.2d at 882.

10. 11 U.S.C.A. § 522(b), (d) (West 2004 & Supp.2005).

11. *Id.* § 522(*l*).

12. *Taylor,* 503 U.S. at 642–44, 112 S.Ct. at 1647–48; *In re Sadkin,* 36 F.3d 473, 477 (5th Cir.1994); *In re Montgomery,* 80 B.R. 385, 388 (Bankr.W.D.Tex.1987).

13. *In re Bell,* 225 F.3d 203, 215 (2nd Cir. 2000); *see also Owen v. Owen,* 500 U.S. 305, 308, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) ("An exemption is an interest withdrawn from the estate ... for the benefit of the debtor.").

14. *See Taylor,* 503 U.S. at 642–44, 112 S.Ct. at 1647–48 (applying exemption to cause of action that was pending when bankruptcy was filed); *Sadkin,* 36 F.3d at 474, 477–78 (applying exemption to claim that was only a potential cause of action when bankruptcy was filed).

15. *See Sadkin,* 36 F.3d at 474, 477–78 (holding that debtor's potential cause of action for lost income due to wrongful garnishment was exempt from bankruptcy estate because no timely objection to exemption was filed). Objections to property claimed as exempt must be made within thirty days after the conclusion of the first meeting of creditors unless the bankruptcy court grants additional time. FED. R. BANKR.PROC. 4003(b); *Taylor,* 503 U.S. at 642, 112 S.Ct. at 1647. Here, the first meeting of creditors was held on October 23, 2001.

16. *See Owen,* 500 U.S. at 308, 111 S.Ct. at 1835; *Bell,* 225 F.3d at 215.

17. *Austin Nursing Ctr.,* 48 Tex. Sup.Ct. J. at 626, 2005 WL 1124764, at *3; *Nootsie, Ltd.,* 925 S.W.2d at 661.

bodily injury and in compensation for loss of future earnings.[18]

Appellants assert that these subsections do not authorize the exemption of a cause of action from the bankruptcy estate, but only authorize the exemption of part of the proceeds from a claim or cause of action after the proceeds have been collected. They contend that, "[w]ith the statutory references to modify the descriptions of her exemptions, no reasonable person would conclude that [Sonja] was claiming the personal injury cause of action itself" as exempt. They also contend that Sonja could not exempt her cause of action from the bankruptcy estate because neither the Bankruptcy Code nor the Texas Property Code allows a debtor to exempt a cause of action.[19] We disagree.

Sonja described the property she was claiming as exempt as "PI *claim* for Debtor Spouse resulting from auto accident; no lawsuit pending at this time. Loss [sic] wages *claim* resulting from auto accident; no lawsuit pending at this time." [Emphasis supplied.] "Cause of action" is included within the definition of "claim."[20] Fur-

ther, because no lawsuit was pending at the time Sonja claimed the exemptions, we construe her property descriptions as claiming at least part of her cause of action itself as exempt, not merely the right to receive proceeds in the event the trustee chose to sue. Moreover, regardless of whether Sonja had a statutory basis for claiming all or part of her cause of action as exempt, she is entitled to the exemption because no one objected when she claimed it.[21]

For all of these reasons, we hold that Sonja had standing to sue appellants. Therefore, the trial court did not err by overruling appellants' plea to the jurisdiction challenging Sonja's standing to sue, and the trial court's judgment is not void for want of jurisdiction. We overrule appellants' first issue.

■ In their second issue, appellants complain that the trial court erred by denying their motion to strike Brown's post-verdict intervention on behalf of the bankruptcy estate. Appellants assert that the intervention was improper because the

18. Section 522(d) provides:
 The following property may be exempted . . .:
 (11) The debtor's right to receive, or property that is traceable to—
 (D) a payment, not to exceed $18,450, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, . . . ; or
 (E) a payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.
 11 U.S.C.A. § 522(d)(11)(D)-(E). At the time of Sonja's lawsuit, the amount in subsection (D) was only $17,425, which is the value Sonja attached to her personal injury claim on her list of exemptions. *See* Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(B) of the Code, 69 Fed.Reg. 8482–01, 2004 WL 329158 (Feb. 24, 2004).

19. *See* 11 U.S.C.A. § 522; TEX PROP.CODE ANN. ch. 42 (Vernon 2000 & Supp.2004–05).

20. BLACK'S LAW DICTIONARY 264 (8th ed.2004).

21. *See Taylor*, 503 U.S. at 642–44, 112 S.Ct. at 1647–48; *Sadkin*, 36 F.3d at 477; *Montgomery*, 80 B.R. at 388. Appellants' reliance on *Tignor v. Parkinson*, 729 F.2d 977 (4th Cir.1984), *Douglas*, 987 S.W.2d at 882, and *Carter v. Carter*, 21 S.W.3d 441 (Tex.App.-San Antonio 2000, no pet.) is misplaced. The bankruptcy trustee in *Tignor* objected to the debtor's claimed exemption of the settlement proceeds from a personal injury claim, and the debtors in *Douglas* and *Carter* did not claim any part of their causes of action were exempt from the bankruptcy estate. *See Tignor*, 729 F.2d at 978; *Douglas*, 987 S.W.2d at 881–82; *Carter*, 21 S.W.3d at 444.

statute of limitations had run, Sonja's suit had not tolled the limitations period as to Brown, and Brown therefore no longer had an enforceable interest to protect.

■ Any party may intervene by filing a pleading, subject to being stricken by the trial court for sufficient cause.[22] The party opposed to the intervention has the burden to challenge it via a motion to strike.[23] We review a trial court's ruling on a petition in intervention under an abuse of discretion standard.[24]

■ Here, regardless of whether limitations had run, Brown had an enforceable interest to protect. When two persons claim an interest in a single cause of action, and one of those persons timely files suit, the remaining party's intervention in the suit outside the limitations period to protect his interest relates back to the timely-filed suit and is not barred by limitations.[25]

In this case, there was only one cause of action—Sonja's personal injury claim against appellants—in which both she and Brown, as bankruptcy trustee, claimed an interest. The purpose of Brown's intervention was to protect the bankruptcy estate's interest in Sonja's recovery on her claim against appellants, not to assert an independent cause of action against them. It is undisputed that Sonja's suit, filed less than two years after the accident, was timely.[26] Therefore, Brown's intervention related back to Sonja's timely filing of the suit and is not barred by limitations.[27] Accordingly, we hold that the trial court did not abuse its discretion by overruling appellants' motion to strike Brown's petition in intervention.[28] We overrule appellants' second issue.

■ In their third issue, appellants challenge the legal and factual sufficiency of the evidence to support the jury's award of $100,000 for Sonja's future medical expenses.

In determining a "no evidence" issue, we are to consider only the evidence and inferences that tend to support the finding of the disputed fact and disregard all evidence and inferences to the contrary.[29] That is, we must "credit[ ] favorable evidence if reasonable jurors could, and disregard[ ] contrary evidence unless reason-

22. TEX.R. CIV. P. 60.

23. *Id.; Guar. Fed. Sav. Bank v. Horseshoe Op. Co.,* 793 S.W.2d 652, 657 (Tex.1990).

24. *Guar. Fed. Sav. Bank,* 793 S.W.2d at 657.

25. *See, e.g., Franks v. Sematech, Inc.,* 936 S.W.2d 959, 960 (Tex.1997) (holding, in worker's compensation subrogation case, that because there is but one cause of action for employee's injuries, which belongs to employee, employee's intervention in compensation carrier's subrogation suit two years after limitations period had expired was not barred by limitations).

26. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(a) (Vernon 2002).

27. *See Franks,* 936 S.W.2d at 960. *Rodriguez v. Printone Color Corp.,* upon which appellants rely, is inapposite because Brown did not seek to assert an independent cause of action against appellants. *See* 982 S.W.2d 69, 73 (Tex.App.-Houston [1st Dist.] 1998, pet. denied) (unpublished text) (holding that trial court did not abuse its discretion by striking petition in intervention of potential coplaintiff whose intervention was simply an attempt to avoid consequences of filing his separate but related causes of action outside limitations period).

28. *See Guar. Fed. Sav. Bank,* 793 S.W.2d at 657.

29. *Bradford v. Vento,* 48 S.W.3d 749, 754 (Tex.2001); *Cont'l Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

able jurors could not."[30] Anything more than a scintilla of evidence is legally sufficient to support the finding.[31] More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact.[32]

An assertion that the evidence is "insufficient" to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.[33] We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.[34]

■ Texas follows the "reasonable probability" rule for damages for future medical expenses.[35] Thus, the plaintiff must show that there is a reasonable probability that such medical expenses will be incurred in the future.[36] Although the preferred practice is to establish future medical expenses through expert medical testimony, no rule requires the plaintiff to establish such expenses through expert testimony or based on a reasonable medical probability.[37] The jury may make its award for future medical care based upon the nature of the plaintiff's injuries, medical care rendered before trial, and the plaintiff's condition at the time of trial.[38]

■ An award of future medical expenses lies largely within the jury's discretion.[39] Because issues such as life expectancy, medical advances, and the future costs of products and services are, by their very nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of these damages.[40]

In this case, the evidence regarding Sonja's future medical expenses is as follows:

At the time of trial, Sonja was 49 years old. The record shows that she suffered a minor, but irreversible, brain injury as a result of the accident, which left her functioning just above the level at which someone would be classified as mentally retarded, caused her considerable pain, and required ongoing treatment and medication.

Dr. Arnold J. Morris, Jr., Sonja's treating physician, and Dr. Andrew William Houtz, a clinical neuropsychologist who had tested Sonja's cognitive function extensively on three different occasions, both testified regarding the permanent nature

30. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, No. 02–1012, 2005 WL 1366509, at *1 (Tex. June 10, 2005).

31. *Cont'l Coffee*, 937 S.W.2d at 450; *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex.1996).

32. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex.2002).

33. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

34. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex.), *cert. denied*, 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998).

35. *Columbia Med. Ctr. of Las Colinas v. Bush*, 122 S.W.3d 835, 862–63 (Tex.App.-Fort Worth 2003, pet. denied).

36. *Id.*

37. *Id.* at 863; *see also Pipgras v. Hart*, 832 S.W.2d 360, 366 (Tex.App.-Fort Worth 1992, writ denied) (holding that "no precise evidence is required to support an award of future medical damages").

38. *Tagle v. Galvan*, 155 S.W.3d 510, 519 (Tex. App.-San Antonio 2004, no pet.).

39. *Columbia Med. Ctr.*, 122 S.W.3d at 863.

40. *Sanmina–SCI Corp. v. Ogburn*, 153 S.W.3d 639, 642–43 (Tex.App.-Dallas 2004, pet. filed).

of Sonja's brain injury. Dr. Morris also testified that he had treated Sonja for chronic pain resulting from her brain injury since July of 2001 and was continuing to treat her at the time of trial. In the year before trial, Dr. Morris had seen Sonja slightly more often than once a month (fourteen times), at an average cost of $126.64 per visit. Dr. Morris testified that these medical services were necessary to properly treat Sonja for her injuries and that the charges were reasonable.

In addition, throughout his treatment of Sonja, Dr. Morris had regularly prescribed for her a narcotic for pain, as well as muscle relaxers and anti-anxiety drugs. The medications ranged in price from $51.30 to $134.34 per prescription, and Sonja's pharmacy records indicate that several of the prescriptions were refilled at least monthly. Dr. Morris testified that Sonja did not function well, that her pain was "prominent," and that she did not have any way of dealing with it other than through medication. Sonja testified at trial that she was taking two medications prescribed by Dr. Morris four times a day. Dr. Morris testified that the prescriptions were necessary to help relieve the effects of Sonja's injuries from the accident and that the charges for the medications were reasonable for the area and the dates on which they were prescribed.

Further, the jury awarded Sonja $27,910 for past medical care, or approximately $8,587.69 per year,[41] and appellants do not challenge that finding.

We hold that this evidence of the nature of Sonja's injuries, her past medical care, and her condition at the time of trial is more than a scintilla of evidence that Sonja will in reasonable probability incur $100,000 in future medical expenses. Moreover, this evidence is not so weak, nor is the evidence to the contrary so overwhelming, that the jury's finding should be set aside and a new trial ordered. Accordingly, the evidence is legally and factually sufficient to support this element of the jury's damages award.[42] We overrule appellants' third issue.

Having overruled all of appellants' issues, we affirm the trial court's judgment.

---

41. The period of time between the accident and trial—January 31, 2001 through April 12, 2004—was just over thirty-nine months.

42. *See Cont'l Coffee,* 937 S.W.2d at 450; *Leitch,* 935 S.W.2d at 118; *Garza,* 395 S.W.2d at 823.