

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00395-CV

———————————————

JOSE M. GARCIA PEREZ, Appellant

V.

NATASHA M. WILLIAMS, Appellee

On Appeal from the 17th District Court
Tarrant County, Texas
Trial Court No. 017-318990-20

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

**MEMORANDUM OPINION**

This is a negligence case stemming from a car collision. Appellant Jose Garcia Perez rear-ended Appellee Natasha Williams, and a jury was asked to determine Williams's damages. At trial, Perez acknowledged that he had been driving without a license at the time of the collision, but Williams's counsel also elicited testimony that Perez had continued to drive without a license after the collision. Perez challenges the admission of this testimony, along with the sufficiency of the evidence to support Williams's past and future medical expenses. We will affirm.

## I. Background

In 2019, Perez rear-ended Williams's vehicle, causing a herniated disc in Williams's back. Perez stipulated to liability for negligence, so the jury trial focused on damages.[1]

Before trial, Williams served Perez with affidavits that confirmed the reasonableness and necessity of her past medical expenses pursuant to Section 18.001 of the Texas Civil Practice and Remedies Code.[2] *See* Tex. Civ. Prac. & Rem. Code

---

[1]Williams also sued the woman who owned the vehicle that Perez was driving, alleging negligent entrustment. Williams nonsuited the negligent entrustment claim before trial.

[2]The Section 18.001 affidavits that Williams filed with the trial court referenced, but did not include, itemized statements of the services and charges. *Cf.* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(c)(3). Nonetheless, Perez does not dispute that Williams served him with affidavits that complied with Section 18.001, and the Section 18.001 affidavits that Williams admitted into evidence at trial were accompanied by itemized statements of the services and charges.

Ann. § 18.001.  Perez, in turn, served Williams with controverting affidavits that disputed, among other things, the reasonableness of some of Williams's medical expenses.  *See id.*

Despite Perez's controverting affidavits, Williams offered her Section 18.001 affidavits—accompanied by relevant billing records—into evidence at trial.  Perez did not raise a hearsay or Section 18.001 objection to any of these exhibits, and he does not challenge the affidavits' admission on appeal.[3]

In addition to introducing the Section 18.001 affidavits and other documentary exhibits into evidence, Williams called three witnesses:  herself, Perez,[4] and her chiropractor Dr. Peter McRee.  Perez called no witnesses and offered no exhibits.

The jury awarded Williams more than $208,000 in damages, including amounts for past and future physical pain, for loss of earning capacity, for past and future physical impairment, and for past and future medical expenses.  The jury did not award any damages for mental anguish.

Perez filed a motion for new trial that disputed, among other things, the factual sufficiency of the evidence to prove Williams's past and future medical expenses.  The trial court denied the motion and entered judgment in accordance with the verdict.

---

[3]At trial, Perez only objected to the admission of one of Williams's Section 18.001 affidavits:  the affidavit that accompanied Williams's MRI billing records. Perez argued that Williams's chiropractor was not qualified to sponsor this exhibit.

[4]Perez testified through an interpreter.

## II. Discussion

Perez raises three issues on appeal; he challenges (1) the trial court's admission of testimony regarding Perez's driving without a license after the collision, (2) the legal and factual sufficiency of the evidence to support a portion of the jury's award for past medical expenses, and (3) the legal and factual sufficiency of the evidence to support the jury's award for future medical expenses.

### A. Admission of Evidence: Post-Collision Driving Without a License

In his first issue, Perez argues that the trial court erred by admitting testimony that he drove without a license after the collision. Perez did not preserve this issue, though, and even if he had, any error in the admission of the post-collision evidence was harmless.

#### 1. Waiver

Williams argues that Perez's opening statement referred to Perez's driving without a license after the collision and thus "opened the door" to the admission of evidence on that subject.

Generally, if a party is the first to broach an inadmissible subject matter in its opening statement or presentation of evidence, he then is considered to have "opened the door" to evidence on that subject. *See Campbell v. Pompa*, 585 S.W.3d 561, 585 (Tex. App.—Fort Worth 2019, pet. denied) (holding that appellant opened the door to evidence regarding nonsuited claims by being "the first to introduce the jury to the existence of [those] claims during opening argument"); *see McInnes v. Yamaha Motor*

4

*Corp., U.S.A.*, 673 S.W.2d 185, 188 (Tex. 1984) (holding that appellant opened the door and noting that he not only introduced the first evidence on the objectionable subject but also made the first reference to it in his opening statement). "When a party opens the door to evidence, [he] may not be heard to complain of the admission of that evidence when offered by the other side." *Campbell*, 585 S.W.3d at 585.

Here, Williams claims that Perez's counsel's opening statement opened the door to evidence of his post-collision, licenseless driving by telling the jury that (1) "Mr. Perez was on his phone and he doesn't have a driver's license, but he wasn't going out intentionally trying to break the law"; and (2) "he was using his GPS . . . , and maybe he doesn't have a license, but he has to drive to his job, and that's just one of the sad facts that Mr. Perez has to deal with."

As an initial matter, while it may be unclear whether these comments in Perez's opening statement intended to reference his driving without a license at the time of the collision or his driving without a license afterwards, the record is clear that Perez's counsel used the present tense to refer to Perez's lack of a license.[5] But even assuming that the employment of these present-tense phrases within past-tense descriptions of the collision created some ambiguity, the Texas Supreme Court has held that a comparably vague statement by a party's counsel was sufficient to open the door to later-challenged evidence on that subject.

_____

[5]Perez's counsel employed phrases such as "he doesn't have" and "he has to drive."

5

In *Bay Area Healthcare Group, Ltd. v, McShane*, the court held that the plaintiff opened the door to evidence from superseding pleadings regarding two nonsuited doctors. 239 S.W.3d 231, 234 (Tex. 2007). The court explained that the plaintiff's "attorney was the first to allude to the doctors' party status by telling the jury panel"—in voir dire no less—"that a doctor's conduct 'could have been brought before this Court in this trial' but 'both sides have not done that at this trial.'" *Id.* at 233–34 (holding further that evidence was admissible anyway). Perez's present-tense references to his licenseless driving are no more ambiguous than the vague references to the nonsuited defendants in *Bay Area Healthcare.*[6]

Through the use of present-tense language in acknowledging that Perez had no driver's license, Perez's opening statement opened the door to the post-collision evidence of which he now complains, and he has waived his challenge to this evidence. *See id.* at 234; *Pojar v. Cifre*, 199 S.W.3d 317, 337–38 (Tex. App.—Corpus Christi–Edinburg 2006, pet. denied) (holding that defendant in car-collision case opened the door to evidence of his history of marijuana use because, although the plaintiff's opening statement referenced marijuana use on the night of the collision,

---

[6]Furthermore, the primary purpose of the waiver and preservation rules is to make the trial court aware of the party's complaint. Tex. R. App. P. 33.1(a)(1)(A). And here, the trial court appears to have understood Perez's opening statement as referencing his post-collision lack of a driver's license. After opening statements, when Perez objected to the admission of evidence regarding his post-collision driving, the trial court overruled his objection "in light of what the [c]ourt heard in opening statements." Perez did not question or express confusion as to what the trial court was referencing.

the defendant's opening was the first to reference his history of marijuana use by mentioning that he smoked marijuana approximately 27 hours before the collision).

## 2. Harmless Error

Even if Perez had preserved his challenge to the post-collision evidence, though, and even assuming that the admission of this evidence was erroneous, Perez has not demonstrated harm.

The "[e]rroneous admission of evidence is harmless unless the error probably (though not necessarily) caused rendition of an improper judgment." *Reliance Steel & Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871–75 (Tex. 2008). The harm determination is based on a "review [of] the entire record, 'considering the state of the evidence, the strength and weakness of the case, and the verdict.'" *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 165 (Tex. 2015) (quoting *Reliance Steel*, 267 S.W.3d at 871); *see Reliance Steel*, 267 S.W.3d at 871 (noting that there is not a specific test for harmless error review). If the inadmissible evidence was crucial to a key issue in the case, then the error was likely harmful, but if the inadmissible evidence was cumulative, then the error was likely harmless. *See JLG Trucking*, 466 S.W.3d at 165.

The evidence of Perez's licenseless post-collision driving had no discernable effect on the judgment and was cumulative of other, unobjected-to evidence.

"The starting point for harmless-error review is the judgment," *Reliance Steel*, 267 S.W.3d at 871, and here, the challenged post-collision evidence is not relevant to anything in the judgment. At trial, Williams argued that the evidence that Perez drove

without a license after the collision was relevant to prove Williams's damages for mental anguish. While we fail to see the logical connection between the two, the jury chose not to award Williams any damages for mental anguish.

Perez contends that the judgment reflects an improper jury bias—a bias he attributes to the evidence of his licenseless, post-collision driving—because the jury awarded "excessive" amounts for past medical expenses, future medical expenses, and future pain and suffering. His prime example of this excess is the award for past medical damages: Perez emphasizes that Williams sought $22,833.99 for her past medical expenses but that the jury awarded $22,834—a penny more. He equates this "surprisingly large verdict" with that in *Reliance Steel & Aluminum Co. v. Sevcik*, where the Texas Supreme Court held that the erroneous admission of evidence regarding the defendant's wealth was harmful. 267 S.W.3d at 871–75. There, one of the plaintiffs proved and requested $33,985.23 in past medical expenses, but the jury awarded $40,000. *Id.* at 871–72. This excess was not alone; the jury's awards "generally exceeded [the evidence] by a substantial amount," including by awarding $750,000 in future earnings capacity to a plaintiff whose tax returns for the five years leading up to the accident "showed a total income of $7,562 for all five years combined." *Id.* at 872. These "inflated" figures led the court to conclude that "something beyond the relevant evidence was guiding the jury's deliberations." *Id.* at 871–82.

The judgment in this case does not reflect the "inflat[ion]" present in *Reliance Steel. Id.* Rounding up one penny—from 99 cents to a dollar—in a jury's award of a

8

documented sum of past medical expenses does not render that award "excessive" or somehow reflect an improper bias. Rather, it is plausible that the jury merely rounded up so as to arrive at an even sum.

Plus, as we hold below, the awards for past medical expenses and future medical expenses are each supported by factually sufficient evidence. And the only other sum of damages that Perez labels "excessive" is the jury's award of $50,000 for future physical pain. *Cf. id.* at 872 (noting that damages for "future pain and mental anguish and future physical impairment [are] matters as to which the lack of specific proof available makes it very hard to say whether [a] jury's award [i]s either 'too low' or 'too high'"). But Williams was only 29 years old at trial, presumably with many years ahead of her. Dr. McRee predicted that, "the disc [in Williams's back] will most likely remain herniated the rest of [her] life" and "for 20 and 30 years down the road, [she] . . . could experience on-and-off pain symptoms." Given this evidence, together with the jury's unchallenged award of $17,500 for the past physical pain that Williams suffered in the two and one-half years between the collision and trial, we cannot say that $50,000 is an "excessive" sum to compensate the 29-year-old Williams for the future pain she anticipated experiencing for the remainder of her life.

Moreover, the "erroneous admission [of evidence] is harmless if it is merely cumulative," *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004), and the evidence that Perez drove without a license post-collision was cumulative of the unobjected-to evidence that he had been driving without a license at the time of the

9

collision. Williams's counsel elicited testimony regarding both the mid-collision and post-collision licenseless driving to emphasize a single point: that Perez had violated a Texas law that everyone else had followed and that was designed to ensure a minimum level of driver competency. *See Reliance Steel*, 267 S.W.3d at 873 (noting that harmless-error review "also look[s] to efforts by counsel to emphasize the erroneous evidence"). Williams's cross-examination of Perez drove this point home:

- "Mr. Perez, you understand that every time you drive on Texas roads you're breaking Texas law by driving without a Texas driver's license; you understand that?"

- "[D]o you understand that every person in this room has to have a driver's license, because the State of Texas imposes that requirement on us when we drive on Texas roads?"

- "[D]o you understand that before somebody is given a Texas driver's license, they have to pass two exams . . . so that the likelihood of collisions occurring diminishes because the person is competent, pursuant to the laws [of] the State of Texas, to be able to drive . . . ?"

- "[Y]ou never passed the Texas required driver's license exam in order for you to lawfully drive on Texas roads; is that correct?"

To each of these questions, Perez responded with the answer Williams expected—confirming that he understood he was breaking the law, that he knew a licensing exam was necessary, and that he had never passed a driver's license exam. Perez did not object when Williams's counsel asked him whether he had been driving without a license at the time of the collision, nor did he object to many of the broader questions regarding the licensing laws in general.

The "efforts by counsel to emphasize the erroneous evidence" in their jury arguments further reaffirmed the cumulative nature of Perez's post-collision driving. *Id.* Counsel in this case often referenced Perez's licenseless driving with such broad, ambiguous statements that the distinction between his lack of a license during the collision became muddied with his lack of a license after the collision. For example, Williams's counsel argued in his closing that "Texas forbids [Perez] from driving," though at what point in time this was forbidden was unclear. Even Perez's counsel, in his attempts to downplay the evidence of licenseless driving, muddied the distinction.[7] As we discussed above, Perez's opening statement conceded that "maybe he doesn't have a license," but again, this comment was articulated in the present tense and was not limited to the timeframe of the collision itself.

Overall, while Perez's lack of a driver's license received a fair amount of emphasis at trial, the emphasized component of the inadmissible post-collision evidence was that Perez drove without a license in violation of the law, and that came in through unobjected-to evidence. We fail to see how the often-muddied distinction between Perez's mid-collision and post-collision driving could have been so significant as to have a decisive impact on this verdict.

---

[7]Perez's appellate brief muddies the distinction as well by pointing to comments regarding Perez's driving without a license at the time of the collision as evidence that Williams emphasized Perez's driving without a license afterwards.

The evidence that Perez had driven without a license after the collision was thus cumulative of the evidence that he had been driving without a license at the time of the collision, and Perez has failed to demonstrate that this evidence had any apparent, discernible effect on the judgment. Because we cannot conclude that the admission of the post-collision evidence probably caused the rendition of an improper judgment, *see Reliance Steel*, 267 S.W.3d at 871, we overrule Perez's first issue.

## B. Evidentiary Sufficiency: Past Medical Expenses

Perez next alleges that the evidence is legally and factually insufficient to support the jury's $22,834 award for past medical expenses because Dr. McRee was unqualified to testify to the reasonableness of three specific amounts charged.

### 1. Legal Sufficiency

First, Perez failed to preserve his legal sufficiency complaint.

After a jury trial, a legal sufficiency challenge may be preserved in the trial court in one of the following ways: (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of the issue to the jury, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex. 1985). Perez did not file a motion for an instructed verdict, a motion for judgment notwithstanding the verdict, a motion to disregard the jury's answer, or an objection to the submission of an issue. And although he filed a motion for new trial, that motion only challenged the factual sufficiency—not the legal sufficiency—of the

12

jury's $22,834 award for past medical expenses. Perez thus failed to preserve his legal sufficiency complaint. *See* Tex. R. App. P. 33.1(a).

### 2. Factual Sufficiency

Perez's motion for new trial preserved his factual sufficiency complaint, though. *See* Tex. R. Civ. P. 324(b)(2)–(4); *In re M.S.*, 115 S.W.3d 534, 547 (Tex. 2003). In that complaint, Perez contends that there is factually insufficient evidence to support the reasonableness of three past medical expenses:[8] the $2,470 kinesio-taping charge, the $6,152 MRI[9] charge, and the $1,475 MRI-interpretation charge.[10]

When reviewing a factual sufficiency challenge, we will set aside the challenged finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the finding is so weak or so contrary to the great weight and preponderance of the evidence that the finding must be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *see Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761–62 (Tex. 2003) (quoting *In re King's Estate*, 244 S.W.2d 660, 661 (Tex. 1951)); *Werner Co. v.*

---

[8]As Williams points out, Perez only challenges $10,097 of the past-damages award—the $2,470 kinesio-taping charge, the $6,152 MRI charge, and the $1,475 MRI-interpretation charge. The remainder of the $22,834 is unchallenged.

[9]MRI stands for magnetic resonance imaging.

[10]Perez's motion for new trial did not mention the $1,475 MRI-interpretation charge. Nonetheless, because the motion challenged the factual sufficiency of the evidence to support the jury's award for past medical expenses, Perez adequately preserved the issue. *See* Tex. R. App. P. 33.1(a).

13

*DeVallee*, No. 02-19-00043-CV, 2021 WL 1134387, at *7–8 (Tex. App.—Fort Worth Mar. 25, 2021, pet. filed) (mem. op.).

Perez's factual sufficiency complaint narrowly focuses on Dr. McRee's testimony, which Perez characterizes as the "only" relevant expert evidence of reasonableness. But this overlooks Williams's Section 18.001 affidavits.

Although expert testimony is generally required to establish that a claimant's past medical expenses are reasonable and necessary, Section 18.001 of the Texas Civil Practice and Remedies Code "provid[es] for the use of affidavits to streamline proof of the reasonableness and necessity of medical expenses" without bringing an expert to testify. *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011); *see In re Allstate Indem. Co.*, 622 S.W.3d 870, 876 (Tex. 2021) (orig. proceeding). To take advantage of this streamlined process, the claimant must serve the other parties with a statutorily compliant affidavit in which a qualified individual confirms the reasonableness and necessity of the complainant's itemized medical expenses.[11] Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b), (c); *Gunn v. McCoy*, 554 S.W.3d 645, 672–73 (Tex. 2018) (noting that Section 18.001 does not negate the need for legally sufficient evidence and that the affidavit must be made by a person who falls in one of the statutory

---

[11]The claimant's affidavit must, among other things, (1) "include an itemized statement of the service and charge"; (2) state "that the amount a person charged for a service was reasonable at the time and place that the service was provided and that the service was necessary"; and (3) be "made by . . . the person who provided the service[] or . . . the person in charge of records showing the service provided and charge made." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b), (c).

14

categories and is "in a position to testify to the reasonableness and necessity of medical expenses"). "Unless a [statutorily compliant] controverting affidavit is served" by the defendant, a claimant's Section 18.001 affidavit is admissible at trial and "is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b). Section 18.001 is thus "an evidentiary statute" that "allows claimants to introduce evidence of reasonableness and necessity through affidavits that would otherwise be hearsay." *Allstate Indem.*, 622 S.W.3d at 881–82; *Atwood v. Pietrowicz*, No. 02-10-00010-CV, 2010 WL 4261600, at *4 (Tex. App.—Fort Worth Oct. 28, 2010, no pet.) (mem. op.).

Here, for each challenged medical expense—the $2,470 kinesio-taping charge, the $6,152 MRI charge, and the $1,475 MRI-interpretation charge—it is undisputed that Williams served Perez with a statutorily compliant Section 18.001 affidavit.[12] *See* Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b). Perez, in turn, served controverting affidavits, abrogating the Section 18.001 procedure by rendering Williams's controverted Section 18.001 affidavits inadmissible hearsay, and thereby "forc[ing] [Williams] to prove reasonableness and necessity by [live] expert testimony at trial." *Hong v. Bennett*, 209 S.W.3d 795, 801 (Tex. App.—Fort Worth 2006, no pet.); *see Wal-*

---

[12]The three relevant Section 18.001 affidavits substantially complied with the affidavit form in Section 18.002(b-1) of the Texas Civil Practice and Remedies Code.

15

*Mart Stores Tex., LLC v. Bishop*, 553 S.W.3d 648, 672 (Tex. App.—Dallas 2018, pet. granted, judgm't affirmed as modified w.r.m.) (mem. op.) (similar).

But Perez could not rely solely on this procedural victory to prevent the jury from considering this evidence; he was still required to object to Williams's inadmissible Section 18.001 affidavits when they were offered into evidence at trial.[13] This he did not do.

When Williams offered her Section 18.001 affidavits into evidence at trial,[14] Perez did not raise a hearsay objection or mention Section 18.001.[15] Even on appeal, Perez does not challenge the admission of any of Williams's Section 18.001 affidavits. So while Williams's Section 18.001 affidavits were inadmissible and could have been excluded as hearsay, they were admitted into evidence without a hearsay objection,

---

[13]In *Liang v. Edwards*, our sister court rejected the plaintiff–appellee's argument that the defendant–appellant was required to "do anything more than file a counteraffidavit to inform the trial court of her objection to the [admission of the] original affidavit." No. 05-15-01038-CV, 2016 WL 7163841, at *4 (Tex. App.—Dallas Nov. 23, 2016, no pet.) (mem. op.). This statement was arguably dictum, though, as the court went on to note that the defendant–appellant raised objections to the admission of the plaintiff–appellee's Section 18.001 affidavits both prior to voir dire and again when the affidavits were introduced into evidence at trial. *Id.* Moreover, unlike Perez, the defendant–appellant in *Liang* raised an appellate issue challenging the trial court's admission of the plaintiff–appellee's Section 18.001 affidavit into evidence. *Id.* at *2–6.

[14]Perez did not offer his controverting affidavits as evidence at trial.

[15]Perez raised no objection to the admission of the Section 18.001 affidavits that accompanied the kinesio-taping invoice and the MRI-interpretation invoice. And although he objected to the Section 18.001 affidavit accompanying the MRI invoice, his only objection was that Dr. McRee was not qualified to sponsor the exhibit.

and the jury could consider them.  *See* Tex. R. Evid. 802 (noting that hearsay evidence admitted without objection has probative value).

For the $2,470 charge for kinesio taping—$95 for each of 26 instances—the jury received a copy of the itemized invoice from Dr. McRee's employer showing each $95 taping charge.  An affidavit from the "custodian of the billing records"[16] authenticated the invoice and confirmed that "[t]he services provided were necessary and the amount charged for the services was reasonable at the time and place that the services were provided."  Similarly, for the $6,152 MRI charge, the jury received a copy of the invoice from the MRI provider along with an affidavit from the billing-records custodian that authenticated the invoice and confirmed that "[t]he services provided were necessary and the amount charged for the services was reasonable at the time and place that the services were provided."  And for the $1,475 MRI-interpretation charge, the jury received a copy of the invoice from the service provider, along with an affidavit from the billing-records custodian that authenticated

---

[16]"[G]iven the complexity of modern health care costs and the lack of transparency in health care pricing, 'it is not uncommon or surprising that a given medical provider may have no basis for knowing what is a "reasonable" fee for a specific service,'" while an "insurance agent[] who ha[s] access to national and regional databases on which [he] can compare prices '[may be] generally well-suited to determine the reasonableness of medical expenses.'"  *Allstate Indem.*, 622 S.W.3d at 877 (quoting *Gunn*, 554 S.W.3d at 673).  Section 18.001 thus "reflect[s] today's complex health care system" by authorizing the "person who provided the service" or the "person in charge of records showing the service provided and charge made" to confirm the reasonableness of a medical expense.  Tex. Civ. Prac. & Rem. Code Ann. § 18.001(b), (c); *Gunn*, 554 S.W.3d at 674.

the bill and stated that "[t]he services provided were necessary and the amount charged for the services was reasonable at the time and place that the services were provided."

Perez does not address any of this documentary evidence. He does not challenge the expert qualifications of the affiants to attest to the reasonableness of the challenged expenses,[17] *see Allstate Indem.*, 622 S.W.3d at 877–78 (discussing *Gunn*, 554 S.W.3d at 672–73, and explaining that a claimant's Section 18.001 affidavit must be made by a person qualified to testify that the expenses are reasonable), nor does he claim that the affidavits are conclusory, *cf. Windrum v. Kareh*, 581 S.W.3d 761, 770 (Tex. 2019) ("When the evidence presented to the jury is conclusory, it is considered no evidence."). Instead, Perez implicitly assumes that his filing of controverting Section 18.001 affidavits robbed Williams's unobjected-to[18] Section 18.001 affidavits of evidentiary value. This is not so. *See* Tex. R. Evid. 802 ("Inadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay."); *Adams v. State Farm Mut. Auto. Ins. Co.*, 264 S.W.3d 424, 430–31 (Tex.

---

[17]*But see Castillo v. Am. Garment Finishers Corp.*, 965 S.W.2d 646, 654 (Tex. App.—El Paso 1998, no pet.) (stating in pre-*Allstate*, pre-*Gunn* case that although Section 18.001 "provide[s] for the admissibility of an uncontested affidavit of a non-expert custodian of records which establishes the reasonableness and necessity of medical expenses, [the legislature] has not provided that a custodian of records is competent to offer live testimony of these same facts").

[18]As previously noted, although Perez objected to the admission of one of the three relevant Section 18.001 affidavits, his objection was neither successful nor based on Section 18.001. *See supra* note 15.

18

App.—Dallas 2008, pet. denied) (op. on reh'g) (rejecting challenge to evidentiary value of unobjected-to Section 18.001 affidavits because, even if the appellant "[wa]s correct that the affidavits did not qualify for admission under [S]ection 18.001, then the affidavits were arguably inadmissible hearsay," and that "goes to the admissibility of the affidavits, not their competence").

Because Williams's unchallenged Section 18.001 affidavits were factually sufficient to support the jury's award for past medical expenses, *cf., e.g.*, *Silva v. Diaz*, No. 05-20-00443-CV, 2022 WL 3500008, at *10 (Tex. App.—Dallas Aug. 18, 2022, no pet. h.) (mem. op.) (holding that evidence was factually sufficient to support jury's award of past medical expenses when claimant offered uncontroverted Section 18.001 affidavits from records custodians); *Cowboys Concert Hall-Arlington, Inc. v. Jones*, No. 02-12-00518-CV, 2014 WL 1713472, at *18 (Tex. App.—Fort Worth May 1, 2014, pets. denied) (per curiam) (mem. op.) (noting appellant's acknowledgment that evidence was sufficient to support past medical expenses when those expenses were supported by record custodians' affidavits regarding reasonableness and necessity); *K-Mart Apparel Fashions Corp. v. Ramsey*, 695 S.W.2d 243, 247 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.) (holding that evidence was sufficient to support jury's award of past medical expenses when defendant failed to object to hearsay affidavit from neurosurgeon stating that expenses were reasonable and necessary), we overrule Perez's second issue.

**C.    Evidentiary Sufficiency:  Future Medical Expenses**

In his third and final issue, Perez challenges the legal and factual sufficiency of the evidence to support the jury's award of $75,000 for future medical expenses.  He claims that Dr. McRee was not qualified to address future medical expenses, that Dr. McRee's testimony merely speculated that such expenses would be necessary, and that there was no evidence that any hypothetical future medical treatment would total $75,000.[19]

**1.    Legal Sufficiency**

Again, Perez did not raise his legal sufficiency challenge in "(1) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or, (5) a motion for new trial."  *Aero Energy*, 699 S.W.2d at 822.  He thus failed to preserve his legal sufficiency compliant.  Tex. R. App. P. 33.1(a).

**2.    Factual Sufficiency**

Turning to his preserved factual sufficiency complaint, Perez contends that the evidence was insufficient to establish the probable need for or cost of Williams's future medical care.  Specifically, he takes issue with the uncertainty surrounding

_____

[19]In Williams's closing statement, her counsel asked the jury to "award anywhere from 50,000 to a hundred thousand for future medical care, because at 29, she's got a long life ahead of her and she's gonna have to deal with this for the rest of her life, [so] 50 to a hundred thousand."

Williams's need for future treatment. He notes that, though there was testimony that Williams would need injections in the future, the injections were recommended more than two years before trial, and Williams still had not received or scheduled any injections at the time of trial. Moreover, Perez contends, Dr. McRee was merely speculating by "guess[ing]" that Williams would need treatment for the rest of her life and stating that "it's possible" Williams will need surgery in 25 to 30 years.[20]

It is true that neither Williams nor Dr. McRee expressed certainty regarding Williams's future need for injections, surgery, or any other form of treatment. But "[a]n award of future damages in a personal injury case is always [somewhat] speculative." *Pipgras v. Hart*, 832 S.W.2d 360, 365 (Tex. App.—Fort Worth 1992, writ denied). "Life expectancy, medical advances, and the future cost of products, services[,] and money are not matters of certainty." *Id.* The jury is instead asked to determine what medical expenses are "reasonabl[y] probab[le]" to be incurred in the future. *Antonov v. Walters*, 168 S.W.3d 901, 908 (Tex. App.—Fort Worth 2005, pet. denied); *see Columbia Med. Ctr. of Las Colinas*, 122 S.W.3d at 862–63. In doing so, a jury may "extrapolate an award of future damages from proof of other matters" such as the medical care rendered before trial, the nature of plaintiff's injuries, and the

---

[20]Perez also argues that Dr. McRee was unqualified to testify regarding the need for future surgery and similar medical care. But while "the preferred practice to establish future medical expenses is through expert medical testimony, no rule exists requiring that the plaintiff establish such expenses through expert testimony." *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835, 863 (Tex. App.—Fort Worth 2003, pet. denied).

plaintiff's condition at the time of trial.  *Antonov*, 168 S.W.3d at 908; *Columbia Med. Ctr. of Las Colinas*, 122 S.W.3d at 863; *Pipgras*, 832 S.W.2d at 365.

Williams offered evidence of the treatment that she had received before trial, the nature of her injuries, her then-current condition, and the treatments that she anticipated in the future.

In the two and one-half years between the collision and trial, Williams incurred more than $20,000 in medical expenses.  Her expenses included a hospital visit, repeated appointments with her primary care physician, repeated sessions with her chiropractor, meetings with a pain-management doctor, an MRI, and prescription durable medical equipment.

Despite these treatments, Williams told the jury that she continued to experience pain, and both she and Dr. McRee described the "lifelong" nature of her injuries:

- Williams told the jury that, after the collision, she began to experience "level 8" (out of 10) back pain that made it "difficult to do different things around the house," to "stand[] for a long period," or to sleep.  Even at the time of trial, Williams testified that she would "still wake up in pain."

- Williams stated that, as she sat testifying for the jury, her pain was still "about a 5."

- Williams testified that "[t]here [wa]s no cure for [her injury], and so [she] will have pain for the rest of her life . . . . [a]nd it will fluctuate."

- Dr. McRee predicted that Williams's "disc will most likely remain herniated for the rest of her life," that it would "have some scar tissue around it," and that it would not "function properly."

22

- According to Dr. McRee, "for 20 and 30 years down the road, [Williams] . . . could experience on-and-off pain symptoms . . . . [that] could change -- vary from day to day, week to week," and season to season.

Williams and Dr. McRee explained that Williams's lifelong condition would probably require lifelong medical treatment:

- Dr. McRee testified that Williams's injury was "susceptible to becoming reinjured again" and his medical records noted "a high probability that [Williams's] injuries may well predispose her to further problems."

- Dr. McRee predicted that Williams's future care "could go -- go up to and include possible lumbar surgery." He told the jury that it was "possible in 25 [to] 30 years that [Williams] may have to go in and do a surgical procedure, probably discectomy, to remove a part or a portion of [the injured] disc."

- Williams's medical records reflected that, in 2019, her pain-management doctor had recommended steroid injections, and Dr. McRee explained that while the injections could "hopefully significantly decrease any type of swelling and inflammation" in the herniated disc, they would not have "a healing effect or a curative effect."

- Dr. McRee stated that "[t]he best we can hope for [was] that we can stop some of the swelling in [the herniated disc] and it will retract some."

Williams also offered evidence of the cost of various aspects of her anticipated future treatment:

- Dr. McRee's medical notes recommended "continued soft tissue treatment" in the future at a cost of $102 per treatment. He initially recommended the treatment a few months after the collision, and he recommended it two times per month "for six months ($1224) to nine months ($1836)." But Dr. McRee testified that Williams "could possibly need treatment [for] the rest of her life."

23

- Williams's medical records reflected that the steroid injections recommended by her pain-management doctor carried a cost of $17,950.[21] From the documentation, this appears to be the cost of a one-time procedure.

Williams thus offered evidence not only that she had incurred more than $20,000 in medical expenses between the collision and trial, but also that her condition was lifelong, that she continued to experience pain, and that her medical providers recommended future treatments—including soft-tissue treatments costing $1,836 per nine-month increment and steroid injections costing $17,950 per procedure—with a likelihood that the need for such treatments could recur throughout her life. Perez did not offer any testimony or documentary evidence to counter Williams's anticipated medical expenses.

Based on this evidence and given the uncertainty—and corresponding discretion—that accompanies a jury's prediction of the future, we cannot say that the jury's $75,000 award for reasonable, probable future medical expenses was against the great weight and preponderance of the evidence. *See Hyde-Way, Inc. v. Davis*, No. 2-08-313-CV, 2009 WL 2462438, at *11 (Tex. App.—Fort Worth Aug. 13, 2009, pet. denied) (mem. op.) (noting that, "because future medical expenses 'are, by their very

---

[21]Although Perez's brief emphasizes that Williams had not received any of the recommended injections, Williams testified that she had not initially scheduled the injections because of her fear of needles, and that "if and when [she] ha[s] to get them, [she] will get them." The jury was free to believe Williams's testimony that she would, in reasonable probability, get the injections in the future. We will not disturb that credibility determination on appeal. *Golden Eagle Archery*, 116 S.W.3d at 761 ("[T]he jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony.").

24

nature, uncertain, appellate courts are particularly reluctant to disturb a jury's award of these damages'" (quoting *Antonov*, 168 S.W.3d at 908)); *Pipgras*, 832 S.W.2d at 365 (similar).

We overrule Perez's third and final issue.

## III.  Conclusion

Having overruled Perez's three issues, we affirm the trial court's judgment. Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  December 1, 2022